## HARP *v.* PATAPSCO GUANO COMPANY.

1. Where personal property was sold and delivered under a parol contract, a condition therein, that the title should remain in the seller until the property was paid for, was, under section 1955(a) of the code, inoperative as to third persons.　Relatively to them, the sale was complete upon the delivery of the property, and the title passed at once to the purchaser; and, there-

fore, their rights in the premises were not affected by his sub-, sequently executing and delivering to the seller a promissory note for the purchase money, wherein the latter's reservation of title, as originally agreed upon, was set forth.

2. Accordingly, a judgment against the purchaser, obtained by a third person after such sale, bound the property, and its lien was not lost because of the subsequent giving of the note in question, nor affected by a final settlement between the seller and the purchaser whereby the contract of sale was rescinded and the property was returned to the former.

Argued November 17,—Decided November 23, 1896. SIMMONS, C. J., being disqualified, did not preside.

*Certiorari.* Before Judge Fish. Macon superior court. May term, 1896.

*J. W. Haygood,* for plaintiff in error.

*R. L. Greer,* contra.

LUMPKIN, Justice.

An execution in favor of the Patapsco Guano Co. against Gouch, founded on a judgment rendered February 9, 1895, was, on October 15 of that year, levied upon a mule, which was claimed by Harp. The issue thus made was tried in a justice's court before a jury, who found the property subject. The claimant thereupon took the case by *certiorari* to the superior court, alleging that the verdict was contrary to law and to evidence. The *certiorari* was overruled, and he excepted. From the evidence as set forth in the magistrate's answer, it appears that Gouch bought the mule from Harp in January, 1895, under a parol contract, by the terms of which the title was to remain in Harp until the mule was paid for, and the mule was immediately delivered to Gouch in pursuance of this contract. So far as can be gathered from the answer to the *certiorari*, the trade between Harp and Gouch was complete when the delivery of the mule took place. It does appear, as an independent fact, that Gouch subsequently executed and delivered to Harp a promissory note for the purchase money of the mule, reciting that Harp had reserved the title, and it also

48

appears that this note was secured by a mortgage on other property; but the evidence, as reported by the magistrate, contains no intimation that the note and mortgage were given in pursuance of any agreement or stipulation made at the time of the sale, and therefore constituting a part of the original contract. The petition for *certiorari* does so allege; but, in this respect, it is not verified by the answer. At any rate, it is absolutely certain that the Patapsco Guano Company obtained its judgment before the note in question was given. In October, 1895, Gouch finding himself unable to pay for the mule, the contract of purchase was rescinded, and the mule was returned to Harp, in whose possession it was when levied upon under the guano company's execution.

Under the facts as set out in the magistrate's answer, which must control our decision in the case, it seems clear that the contract of sale between Harp and Gouch was final and complete on the day the latter took the mule into his possession, without reference to the subsequent execution and delivery of the note and mortgage. In this view, it is obvious that the parol reservation of title in Harp amounted to nothing, as affecting the rights of third persons. Section 1955(a) of the code distinctly declares that in order to render any such reservation of title effectual as against third persons, the contract must be reduced to writing, and attested as a mortgage on personalty. It follows that the lien of the plaintiff's judgment immediately upon its rendition attached to the mule as the property of Gouch, such judgment having been obtained at a time when the contract of conditional sale rested merely in parol, and after actual delivery of the mule to Gouch had taken place. This being so, the judgment lien could not be divested, either by the subsequent giving of the note and mortgage, or by any attempted rescission of the contract of sale afterwards agreed upon between the parties. See *Derrick* v. *Pierce,* 94 *Ga.* 466.

Thus far, the case is certainly free from difficulty. Regarding it in the light of the allegations of the petition for *certiorari*, an additional question arises, but its solution should not, we think, lead to a different result here. Counsel for plaintiff in error argued the case here upon the assumption that the facts were as set forth in that petition, and accordingly contended that the contract of sale included a stipulation that it should not go into effect until the purchaser actually executed and delivered the note and mortgage subsequently given to the seller.    Even from this standpoint, we are confident that the property was subject to the execution.    Upon the theory that the original contract embraced such a stipulation, it was earnestly insisted that at the time the guano company obtained its judgment, the sale was executory and incomplete, and, consequently, that Gouch had acquired no interest in the mule upon which the lien of that judgment could take effect. Following up this theory of the case, counsel urged that the inevitable conclusion to be reached from this state of facts was, that as the note, the delivery of which was necessary to bind the trade, expressly reserved title in the seller, the lien of the judgment could attach only in the event the terms of the sale were strictly complied with, and the purchase money was paid in full. 'This argument was certainly strongly and plausibly presented, but we do not think it can withstand the test of rigid scrutiny and close analysis.    The purpose of our statute evidently is to cut off, as far as possible, the numerous opportunities for fraud which would arise if parties to such secret agreements were permitted at pleasure to assert that the contract of sale—though resting in parol merely, and notwithstanding actual delivery of the property had been duly made—was conditional only, and passed no title to the purchaser. Therefore it is that the parties to such agreements are required to reduce their contracts to writing, and have the same duly attested and recorded as mortgages on personalty.    If they

·fail to ·do so, the law treats delivery of the property as un-conditional, rendering the contract of sale complete, and effectually passing title, so far as the rights of third persons are concerned. Thus regarding delivery as a con-summation of the sale, where the contract rests merely in parol, it makes no difference upon what particular condition such delivery was made. That is to say, the vendor is precluded from setting up that the delivery was conditional only. This is true whether it be stipulated generally that title is to remain in the vendor until the property is fully paid for, or that it is to so remain until the purchaser executes and delivers his promissory note for the purchase money, in which note he is to agree that the title is to continue in the vendor until the note itself is paid. We do not think, therefore, that the claimant in the present case, even if the allegations of his petition for *certiorari* be taken as true, can, relatively to third persons, maintain his contentions that, under his contract with Gouch, no title passed to the latter when the mule was delivered, but remained in the claimant till the note was given, and then continued to remain in him because that instrument expressly so stipulated. As between the parties to the contract, the sale may indeed have been executory and incomplete; but as against all other, the vendor was not at liberty to show that this was so, being precluded by the statute from setting up that the actual delivery of the property in pursuance of the contract of sale was conditional, and that there was no intention to pass title.

It is proper in this connection to refer to the case of *Wiggins* v. *Tumlin*, 96 Ga. 753,—although it is not cited or relied upon by counsel for the plaintiff in error,—in order that what is said above may not be understood as being in conflict with the ruling there made. It appeared in that case that "the owner of personal property delivered the same to another *on trial and for use*, with the understanding that if the property suited the latter, the parties would

close a trade for the sale thereof, and that papers for this purpose should then be executed, there being no limit as to the length of time during which the property might be kept on trial, and no binding obligation to purchase upon the party receiving it." It was accordingly held that the delivery, under such circumstances, amounted to no more than "a mere *bailment* of the property, and not a sale; and if afterwards the party so receiving the property decided to purchase it, and accordingly executed a note for the purchase money, secured by a mortgage, the title did not pass to the purchaser until the contract of sale was thus made and completed." This ruling must certainly be accepted as correct, as section 1955(a) of the code undertakes to deal only with conditional *sales*, and the original "understanding" between the parties in that case did not amount to a sale of any kind. It did not bind the bailee to ever take and pay for the property. Consequently, there was no sale at all until the note and mortgage were given, and the execution of these instruments was a new and independent undertaking, not demanded or required by any previous stipulation or agreement. The present case is clearly distinguishable from that just discussed, and falls squarely within the operation of the statute; for the contract under which the delivery of the mule in question was made was neither more nor less than a contract of sale, which immediately became binding upon both parties thereto.

Moreover, even were the sale treated as incomplete until the giving of the purchaser's note, the claimant would be in no better position than if the contract had never in fact been reduced to writing; for though the note given for the purchase money of the mule did recite that the seller reserved title, it does not appear that this instrument was attested. If not, it was entirely ineffectual to defeat the lien of the guano company's judgment. It will have been observed that the statute provides, not merely that a contract

of conditional sale must be reduced to writing in order to operate as a reservation of title, but also that the contract *must be attested* as mortgages on personalty. The purpose of this requirement is obvious. A wide field for fraud would surely be opened, if the only requirement of the statute was that the contract should be in writing. Unscrupulous parties could readily bolster up an unrighteous cause by reducing to writing a real, or pretended, parol agreement—antedating the instrument so as to meet the emergencies of the particular case. *Merchants Bank* v. *Cottrell & Sons*, 96 *Ga.* 170. Providing for the attestation of such contracts, even if not entirely effectual to prevent fraud, at least renders its perpetration more difficult; for the success of an attempted fabrication of the desired instrument must necessarily depend, not alone upon the willingness of an interested party to testify falsely as to its genuineness, but also upon his ability to procure some obliging accomplice, willing to commit perjury, who will undertake to act the rôle of attesting witness and swear to the due execution of the writing at the time it bears date.

Our conclusion, therefore, is: that in any view of the case, the property should have been found subject, and the *certiorari* was properly overruled. *Judgment affirmed.*