## SOUTHERN PINE CO. OF GEORGIA et al. v. SAVANNAH TRUST CO.

(Circuit Court of Appeals, Fifth Circuit. December 12, 1905.)

No. 1,459.

1. BANKRUPTCY—FINDINGS OF REFEREE—REVIEW.

Findings of fact made by a referee in bankruptcy upon the conflicting testimony of witnesses examined before him have every reasonable presumption in their favor, and should not be set aside or modified unless it clearly appears that there was error or mistake on his part.

2. SAME—RIGHT TO RECLAIM PROPERTY—DELIVERY WITHOUT PAYMENT THROUGH MISTAKE.

Claimant contracted to sell to a car company, which subsequently became bankrupt, boards to be used in the manufacture of cars, the same to be paid for in cash on or before their delivery. The first shipment was paid for before it was delivered, but subsequently, for the accommodation of the president of the car company, and on his assurance that the boards would not be delivered to the company until payment was made, delivery to him was permitted, to enable him to check up the shipment before payment. During the absence of such president, and also of the officer of claimant with whom such arrangement was made, through the oversight of an employé, a shipment went into the hands of the car company without prepayment, and was used in the manufacture of certain cars which came into possession of the trustee in bankruptcy. The cars were afterwards sold under an agreement that the proceeds should be held to await the determination of claimant's rights therein. *Held*, that the transaction was not a conditional sale with a reservation of title, within the provisions of Code Ga. 1895, § 2776, which makes such reservation void as to third parties unless in writing, but that the contract was for a cash sale in which payment was a condition precedent to the sale, and, as the payment was not made and there was in fact no intentional delivery to the car company, the title remained in claimant by operation of law, and it was entitled to recover the value of the boards from the proceeds of the cars.

Appeal from the District Court of the United States for the Southern District of Georgia.

The referee in bankruptcy, before whom this cause was primarily heard, filed the following statement and findings of fact:

"On June 27, 1904, the Savannah Trust Company, trustee in bankruptcy of the Georgia Car & Manufacturing Company, made application to this court for leave to sell 50 box cars, alleged to be the property of the bankrupt estate. On the same day the Southern Pine Company of Georgia and John Schwarz, sheriff of the superior court of Chatham county, Ga., interposed objections to the sale of the cars, reciting that a certain bail trover action had been filed by them against the car company, prior to the bankruptcy proceedings, in the superior court of Chatham county, Ga., by virtue of which these cars and the siding, lining, and roofing contained therein had already been levied on under the proceedings in the superior court, and alleging that the title to the boards was in the pine company, and that the possession was in the superior court through its sheriff, of which it had been summarily deprived by the United States marshal under receivership proceedings in the present bankruptcy case, and praying that the property be restored to the custody of the superior court, or that the sale be suspended until the issue in the superior court be determined. The trustee filed its answer to these objections. The answer, in brief, denied the legality of the levy by the sheriff of the state court, it being within four months prior to the bankruptcy proceedings, by reason of which it became invalidated; alleged that the marshal took possession peaceably and without opposition by any one at the time, and delivered it to the receiver, and he in turn to the trustee; denied the claim of title by the pine company in the lumber; alleged that its claim amounted in value to only $1,136.06 and that it would be inequitable to delay the sale when sufficient of the proceeds could be held up to protect the claim, which can be litigated in the bankruptcy court; and, lastly, denied that the claim to the lumber and cars, or the proceeds of their sale, is preferential or has any priority. A hearing was had on July 8, 1904, at which evidence was taken and the objections to the jurisdiction, as well as the merits of the controversy, were argued; but afterwards, by a stipulation between counsel, it was agreed that the objections to the jurisdiction would be withdrawn, and that the claim case be determined by this court, proceeding as an intervention, using the testimony already taken, and any additional evidence which might be offered. It appears from the

evidence that the principal office of the pine company was located at Savannah, Ga., and that one of its mills was located at Nicholls, Ga. The business of the pine company consisted in manufacturing lumber into boards at Nicholls, and selling them through its office at Savannah. It had special facilities for getting out the class of lumber required for the siding, lining, and roofing of cars. The car company was located near the junction of the Atlantic Coast Line Railway with the Ogeechee Road, about one mile from Savannah, and, as its name indicates, was engaged in manufacturing cars.

"Mr. Foster, president of the car company, and Mr. Stillwell, secretary and treasurer of the appellant, entered into certain business arrangements respecting the furnishing of boards. The boards were to be sold by the pine company to the car company for cash, and they were to be shipped to the pine company at Savannah; but before the boards should come into the possession of the car company the pine company was to be paid cash, and Mr. Foster was to see that this be done. Upon the first shipment from Nicholls, Ga., to the pine company at Savannah, Ga., the latter was paid cash before the boards were removed from its yards. Later Mr. Foster complained about mixing his books, because of the difference between the mill's checking and his checking, and asked Mr. Stillwell to allow him (Mr. Foster) to check the cars up, and said that if this was done he would act as trustee for the pine company, and he would guaranty that the boards would not leave his possession until the cash was paid to the pine company at its office. Mr. Stillwell consented, and the lumber was sent on this basis and delivered to Mr. Foster. The principles and terms of this agreement as to a modus vivendi, so entered into and acted upon, were never altered or expressly changed between them subsequently. Later on Mr. Stillwell was called out of the city on business. During his absence, and that also of Mr. Foster, the boards now in controversy were delivered without prepayment of cash being made by the car company, and, owing to a press of business, it was overlooked by the young man in the pine company's office, whose duty it was, presumably, to have required payment. In the meanwhile, the boards were taken by the car company and used up in the construction of 50 box cars. Mr. Stillwell testifies that this was the true nature of the transaction, and that on his return he had a conversation with Mr. Foster, in which he taxed the latter with having received the boards as trustee for the pine company, and with wrongfully permitting them to get into the possession of the car company. In reply, Mr. Foster testified that he did not remember the exact language of the conversation. He did not deny Mr. Stillwell's version of it, but he said that Mr. Stillwell put the word 'trustee' in his mouth. Notwithstanding the testimony of Mr. Foster, which denies this view of their relations in other parts of his testimony, especially any undertaking to be personally liable, we think that a fair and reasonable conclusion from the entire testimony is that Mr. Stillwell was correct in his statement of the transaction. On the whole, we find that the arrangement was that the goods were to be sold for cash, to be paid for at or before the delivery, and that the prepayment of the purchase price was a condition precedent of the sale. The delivery was a qualified delivery, merely for the purpose of checking up the lumber. A bona fide delivery was wanting in this case."

The hearing before the referee resulted in a judgment in favor of the appellant, the Southern Pine Company, against the appellee, as trustee in bankruptcy of the Georgia Car & Manufacturing Company, for the sum of $1,136.08, representing the value of the boards sold by the Southern Pine Company to the Car Company, with interest thereon at the rate of 7 per cent. per annum from December 18, 1903, the same to be paid out of the proceeds arising from the sale of the 50 box cars. Upon a review of the proceedings, the District Court set aside the order of the referee; and from the order thus made the Southern Pine Company has appealed to this court.

Wm. E. Kay and Wm. W. Gordon, Jr., for appellants.

T. M. Cunningham, Jr., for appellee.

Before PARDEE and SHELBY, Circuit Judges, and MAXEY, District Judge.

MAXEY, District Judge, after stating the facts as above, delivered the opinion of the court.

In the consideration of this case, application of legal principles will be made to the facts as found and reported by the referee. The record discloses conflicts in the testimony, particularly as to the witnesses Stillwell and Foster, the chief actors in the contract to sell the boards which were used by the Georgia Car & Manufacturing Company in the construction of its cars. Upon the trial of the issues before him the referee had the opportunity of seeing and hearing the witnesses, and he was therefore in a better position to judge of their credibility than are courts, which have before them nothing but the printed record. The established rule in such cases, from which we see no reason for departing in the present instance, seems to be that the findings of fact, dependent upon conflicting testimony, by a judge, master, or a referee, who sees and hears the witnesses testify, have every reasonable presumption in their favor, and should not be set aside or modified, unless it clearly appears that there was error or mistake on his part. Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664; Camden v. Stuart, 144 U. S. 104, 12 Sup. Ct. 585, 36 L. Ed. 363; Callaghan v. Myers, 128 U. S. 617, 9 Sup. Ct. 177, 32 L. Ed. 547; In re West (D. C.) 116 Fed. 767; In re Stout (D. C.) 109 Fed. 794; In re Lafleche (D. C.) 109 Fed. 307; In re Waxelbaum (D. C.) 101 Fed. 228; In re Rider (D. C.) 96 Fed. 811.

The principal question in the present case is whether the appellant is in a position to assert title to the boards, as against the appellee, the trustee in bankruptcy of the car company. To determine this question resort must be had to the contract of the parties, and effect should be given to the intention therein expressed, unless such intention should be found to be in contravention of the statute law of Georgia. It appears from the record that the appellant sold or contracted to sell to the car company certain boards, to be used in the manufacture of cars. The boards were sold for cash, and payment was to be made at or before their delivery. Upon the first shipment cash was paid before the boards were removed from the yards of the appellant. Subsequently, as a matter of convenience to Foster in checking up the cars, and upon his assurance that the boards would not be delivered to the car company until payment was made, delivery to him was permitted by Stillwell for the purpose suggested; and during the absence of Stillwell and Foster, and through oversight on the part of an employé in the office of the appellant, the boards went into the hands of the car company without prepayment of cash, and were used by it in the construction of the cars. It is evident that, upon entering into the arrangement for the sale and purchase of the boards, the parties contemplated purely a cash transaction—the payment of the purchase price at or before delivery.

Credit was not extended nor requested, there was no condition affixed to the sale that the title should remain in the vendor, and the delivery of the boards to Foster was a qualified one and for the special purpose above suggested, and not an actual delivery to the car company. The fact that the boards, in the absence of Stillwell, went into the possession of the car company through mistake or oversight on the part of a subordinate employé of the appellant, would not operate to effect a delivery and thereby deprive appellant of valuable property rights, contrary to the expressed agreement and intention of the parties. In the present case the payment of cash was a condition precedent to the sale, and, as cash was not paid, the title remained, by operation of law and not by agreement of the parties, in the appellant. The transaction was at most an executory contract to sell. The principle announced is clearly stated by the Supreme Court of Georgia, in Bergan v. Magnus & Co., 98 Ga. 514–516, 25 S. E. 570. In that case an attachment in favor of Bergan against Allen was levied upon a barrel of whisky, a claim to which was interposed by Magnus & Co. The plaintiff's theory was that the whisky had been sold by the claimants to Allen, and that the title had passed into the latter before the attachment was levied. On the other hand, the contention of the claimants was that, under the terms of the contract between themselves and Allen, the sale had never become complete, and that he had never acquired title. There was some question as to whether Allen had ever obtained possession of the whisky; the claimants insisting that they had exercised their right of stoppage in transitu, and the plaintiff denying that this was true. Mr. Justice Lumpkin, delivering the opinion of the court, said:

"In the view we take of the case, however, this question is immaterial; for, even upon the assumption that Allen actually obtained possession, we are of the opinion that the judge, who tried the case without a jury, rightly found for the claimants. The evidence fully and amply warranted him in reaching the conclusion that the sale from Magnus & Co. to Allen was for cash, which the latter was to pay upon delivery of the whisky, and that prepayment of the price was a condition precedent to the sale. There was no pretense that Allen had paid the price. This being so, even if Allen had in fact obtained possession, the title did not pass to him under the contract, for the reason that he failed to comply with the condition upon which the sale depended. 'If the sale be for money to be immeditately paid, or to be paid upon delivery, payment of the price is a precedent condition of the sale, which suspends the completion of the contract until the condition is performed, and prevents the right of property from passing to the vendee, unless the vendor chooses to trust to the personal credit of the vendee.' The foregoing is an extract from the opinion of Washington, J., delivered in the case of Copland v. Bosquet, 4 Wash. C. C. 588, Fed. Cas. No. 3,212, cited in 1 Benj. on Sales, § 336. To the same effect, see Tiedeman on Sales, § 206."

It was further said by the court:

"The same doctrine was recognized in Harding v. Metz, 1 Tenn. Ch. 610, in which it was held that: 'If personal chattels be sold upon the express condition that they are to be paid for on delivery, and they are delivered upon the faith that the condition will be immediately performed, and performance is refused upon demand in a reasonable time, no title passes to the buyer.' And see Armour v. Pecker, 123 Mass. 143; Salomon v. Hathaway, 126 Mass. 482; Mathewson v. Belmont Flouring Mills Company, 76 Ga. 357."

See, also, Harkness v. Russell, 118 U. S. 667, 668, and 672, 7 Sup. Ct. 51, 30 L. Ed. 285.

It is, however, insisted by the appellee that the transaction in question was a conditional sale, with reservation of title in the appellant until the payment of the purchase price, and, not being in writing, was invalid as to third parties. In support of this contention section 2776 of the Georgia Code of 1895 is invoked. The section referred to provides as follows:

"Whenever personal property is sold and delivered with the condition affixed to the sale that the title thereto is to remain in the vendor of such personal property until the purchase price thereof shall have been paid, every such conditional sale, in order for the reservation of title to be valid as against third parties, shall be evidenced in writing and not otherwise. And the written contract of every such conditional sale shall be executed and attested in the same manner as mortgages on personal property; as between the parties themselves the contract as made by them shall be valid and may be enforced, whether evidenced in writing or not."

The statute invalidates a sale of personal property, as to third parties, when the property is delivered with the condition affixed to the sale that the title is to remain in the vendor until the payment of the purchase price. We have endeavored to show that, in the case before us, the parties contemplated a cash transaction, and that, in the absence of cash payment, there was no sale. Hence there was no divestiture of the appellant's title. It has been further shown that there was no agreement by the parties that the title should remain in the vendor. Under the contract as made the law intervenes and fixes the status of the title, and declares that the ownership of the property shall remain with the appellant until paid for. Finally, delivery of the boards in the manner stated was not a delivery within the intention of the parties, nor within the meaning of the law. We are therefore of the opinion that section 2776 of the Georgia Code of 1895 is inapplicable to the facts of this case, and that the contract between Stillwell and Foster is valid and binding, not only as between themselves, but as to such simple contract creditors as are represented by the trustee in bankruptcy. Questions affecting the rights and status of lien creditors and subsequent purchasers are not here involved, and hence are not determined.

It is further intimated by counsel for the appellee that Bergan v. Magnus & Co., supra, is in conflict with the two later cases of Penland v. Cathey, 110 Ga. 431, 35 S. E. 659, and Harp v. Patapsco Guano Company, 99 Ga. 752, 27 S. E. 181. An examination of the Penland and Harp Cases will disclose the error into which counsel have fallen. In Penland v. Cathey, the sale was a credit sale, and by agreement of the parties title was reserved in the vendor until the mare was paid for. Mr. Justice Little, speaking for the court, said:

"The evidence in the record makes a clear case of such a conditional sale of personal property as is contemplated in section 2776 of the Civil Code of 1895. The property sold and the price to be paid were ascertained and determined, there was no act of the vendee to be performed before the sale was completed, and the delivery was unconditional. This contract not being in writing, the reservation of title was not valid against third parties. Civ. Code 1895, § 2776. The object of the statute is to prevent fraud and perjury. Harp v. Patapsco Guano Co., 99 Ga. 752–758, 27 S. E. 181."

In the Harp Case was involved the sale of a mule. The following clause of the syllabus plainly differentiates that case from the one at bar:

"When personal property was sold and delivered under a parol contract, a condition therein that the title should remain in the seller until the property was paid for was, under section 1955a [now 2776] of the Code, inoperative as to third persons."

The transaction between Stillwell and Foster was characterized by fairness and good faith, there being an utter absence of proof in the record tending to show that there was any intention on their part to defraud the creditors of the car company. In addition the case, as developed by the evidence, demonstrates that it does not fall within the inhibition and denunciation of section 2776 of the Georgia Code of 1895. It must be held, therefore, that the appellee, the trustee of the bankrupt car company, took no better title to the boards than that held by the bankrupt itself at the date of adjudication. Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986; Collier on Bankruptcy (5th Ed.) p. 554; Brand. Bankruptcy (3d Ed.) § 1148; Loveland, Bankruptcy (2d Ed.) p. 367, and authorities cited.

The question remains whether the appellant is entitled to payment of its property in preference to other simple contract creditors represented by the trustee. We have seen that the title to the boards remained in the appellant, and the proof is clear that the identical boards were used by the car company in the manufacture of its 50 cars. These cars, subsequent to the adjudication of bankruptcy, were delivered to the appellee as a part of the bankrupt's estate. The value of the boards was admitted to be $1,136.08, and in order to expedite the closing of the bankruptcy proceedings it was agreed by the parties that a sum sufficient to compensate the appellant should be set aside from the sale of the cars, the same to be paid to it in the event of recovery. The car company, upon obtaining possession of the boards in the manner above indicated, held them as trustee or bailee for the appellant, and the latter, as between the parties to the record before us, is entitled to their value, notwithstanding they may have been negligently or by mistake intermingled with other boards of the car company in the manufacture of cars. The equitable principle, applicable to cases of this character, is clearly stated by Sir George Jessel, Master of the Rolls, whose language is quoted approvingly by the Supreme Court in National Bank v. Insurance Company, 104 U. S. 68, 26 L. Ed. 693. It was shown by Sir George Jessel, said Mr. Justice Matthews, that:

"The modern doctrine of equity, as regards property disposed of by persons in a fiduciary position, is that, whether the disposition of it be rightful or wrongful, the beneficial owner is entitled to the proceeds, whatever be their form, provided only he can identify them. If they cannot be identified, by reason of the trust money being mingled with that of the trustee, then the cestui que trust is entitled to a charge upon the new investment to the extent of the trust money traceable into it; that there is no distinction between an express trustee and an agent, or bailee, or collector of rents, or anybody else in a fiduciary position; and that there is no difference between investments in the purchase of lands, or chattels, or bonds, or loans, or moneys deposited in a bank account."

See, also, In re Woods & Malone (D. C.) 121 Fed. 599; Hall v. Page, 4 Ga. 428, 48 Am. Dec. 235; Claflin v. Continental Works, 85 Ga. 27, 11 S. E. 721; 6 Am. & Eng. Enc. Law (2d Ed.) pp. 594–599.

It follows from what we have said that the ruling of the trial court was erroneous. It is therefore ordered that the decree be reversed, and that a decree be here rendered in favor of the appellant for the sum of $1,136.08, with interest thereon at the rate of 7 per cent. per annum from December 18, A. D. 1903, with costs of suit to be taxed, and that such sum be paid by the appellee from funds in its hands arising from the sale of the 50 box cars.

Reversed and rendered.

NOTE.—The following is the opinion of Speer, District Judge, on the hearing in the District Court:

SPEER, District Judge. In this case the court finds it difficult to assent to the conclusions reached by the referee in his very clear and comprehensive report. Roy C. Foster was the agent of the Georgia Car & Manufacturing Company before it went into bankruptcy. He afterwards became its president. John J. McDonough was a stockholder in that company, and also held a fiduciary relation to the Southern Pine Company; the latter engaged in the manufacture of boards suitable for the uses of the car company. For ethical reasons, it seems, relating to the double trust held by McDonough, the pine company resolved that none of its product should be sold to the car company. It does not appear that this resolution was adopted because of any apprehension that the car company would become insolvent. It was designed to protect Mr. McDonough, and both companies, from the injurious results usually flowing from an avoidance of the well-known doctrine of the law of agency, which forbids an agent to sell if he is appointed to buy and forbids him to buy if he is appointed to sell. It turned out, however, that this resolution became very inconvenient to the pine company, which had boards to sell, and to the car company, which had boards to buy. As appears from the evidence, it soon became necessary for Mr. Foster, representing the car company, and for Mr. Stillwell, representing the pine company, to do business with only formal deference to the resolution. Negotiations began on March 2, 1903. This appears from a letter of that date, written by Foster, as president of the Georgia Car Company, to Mr. Stillwell, secretary of the Southern Pine Company. The pertinent recital of the letter is: "We would order from you as shown by the enclosed order. Orders will be signed by our purchasing agent, Mr. C. B. Deming, and will be approved by myself, as president. Orders coming to you in this manner you would know would have my personal sanction. On the other hand, if neither of the methods is satisfactory, I would hand you my own personal order for the lumber to be given to the car works and settle with you on either a thirty day or cash basis, whichever you would prefer."

Now this is clear notification to Mr. Stillwell that the purchase of the lumber was sought to be made, not for Mr. Foster, but for the car company. It is true Mr. Stillwell replied "No" over the telephone to this application, and also, as appears by a pencil memorandum on the letter, it is stated that he made no written reply. Thereafter, however, on various dates from November 21st to December 18th, inclusive, lumber was delivered and, as was originally intended, was worked up into the cars of the car company. It is contended by the counsel for the pine company that this lumber was sold for cash, and that there was a verbal stipulation that the title was not to pass until the cash was actually received. This may be true. It is also true, however, that the lumber was actually delivered and by the Georgia Car Company, by its operatives, the use of machinery, and the expenditure of its resources, or, more accurately, the resources of its creditors, it was worked up into the finished product. It was made into the sides and tops of about 50 cars. Now, in the manufacture of this lumber, the values represented by the equities of all the creditors of this car company, the machinery which was not paid for, the wages of labor, the

cost of supplies, and everything else needed to keep it a going concern and enable it to manufacture cars, was utilized or expended in the daily operations of the company. Much of these values and of this outlay, like the lumber delivered by the pine company, was furnished on credit. The car company became bankrupt. A trustee was appointed. Eo instante the title of all its assets passed to the trustee for the benefit of the creditors. How, then, can it be said that the Southern Pine Company has a greater claim upon the finished product or any part thereof than the creditors who furnished nails, bolts, wheels, trucks, or the skilled mechanics who did the work, or the manufacturers who furnished the machinery?

A case is cited from the Supreme Court of Georgia (Bergan v. Magnus, 98 Ga. 514, 25 S. E. 570) in support of the contrary view, where it was held that, where the vendor agreed to sell a barrel of whisky and stipulated that the title should not pass until it was paid for, he had a superior claim to that of an attaching creditor of the vendee who had levied on the whisky. It seems, however, that there is a palpable distinction between that case and this. Nothing was done with the whisky. It was found in the original package. Recaption was easy. The equitable right of the third person was involved. It is quite otherwise here; for the claims of every creditor represented by the expenditures necessary to the daily operations of a considerable manufacturing concern all contributed to the common result, namely, the manufacture of cars, and all stand upon the same footing as that of the Southern Pine Company, which merely furnished a portion of the lumber to the business. It cannot be said that this is a conditional sale under the law of Georgia, because there is no compliance with the statute relating to such sales. This section 2776 of the Civil Code of 1895, provides, in order to render such reservation of title effectual as against third parties, the contract must be reduced to writing and attested as a mortgage on personalty. The purpose of this statute is announced by the Supreme Court of the state (Harp v. Patapsco Guano Co., 99 Ga. 752, 27 S. E. 181) "to cut off, as far as possible, the numerous opportunities for fraud which would arise if parties to such secret agreements were permitted at pleasure to assert that the contract of sale, though resting in parol merely, and notwithstanding actual delivery of the property had been duly made, was conditional only, and passed no title to the purchaser. Therefore it is that the parties to such agreements are required to reduce their contracts to writing and have the same duly attested and recorded as mortgages on personalty. If they fail to do so, the law treats delivery of the property as unconditional, rendering the contract of sale complete, and effectually passing title so far as the rights of third persons are concerned." It is to be observed also that the term "third persons," as used by the Georgia statute, does not relate exclusively to those holding liens created subsequently to the date of the original conditional sale. The term includes, we think, all persons whose equities stand upon the same footing as those of the vendor in such sale, had no reservation of title in fact been made.

No matter how Messrs. Stillwell and Foster may have attempted to gloss over this sale, so as to avoid an apparent disregard of the resolution of the Southern Pine Company, it was in all of its nakedness a simple contract of sale between the two companies, which dealt with the manufactured products of one to be used in completing the manufactured products of the other. The court cannot be blind to this obvious and undeniable fact. It is also true, however strenuously it may be insisted that it was a sale for cash, that it was not so treated by either party; for no cash was paid and the deliveries were made at various periods for nearly if not quite a month. In our judgment the effort to recover these boards delivered under these circumstances, after they had been worked into freight cars, by the proceeding in bail trover, must have been defeated. The effort to subject them, or a fund representing the supposed or agreed upon value, to the claim for recaption of the Southern Pine Company, must be equally futile. Creditors of that general class all stand on the same footing. It is a case where equality is equity. They must share alike in the distribution of the fund which remains to requite their unfortunate ventures.