In re KENYON et al.

(District Court, S. D. Ohio, Eastern Division. July 16, 1907.)

1. BANKRUPTCY—FINDINGS OF REFEREE—REVIEW.

A judge will not interfere with the findings of a referee in bankruptcy on questions of fact, unless convinced that they are manifestly against the weight of the evidence.

2. SAME—RIGHT TO RESCIND CONTRACT WITH BANKRUPT—ELECTION OF REMEDIES.

Claimant deposited money with a banking firm four days before it was adjudged a bankrupt on a voluntary petition, receiving a certificate of deposit therefor. With knowledge that the firm was insolvent when it received his deposit, he filed his claim against the estate in bankruptcy. Five months later he made a demand on the trustees for the return of his money, but thereafter filed a new claim, to which, as requested by the referee, he attached a copy of his certificate of deposit, at the same time filing a petition to recover the amount of his deposit from the trustees. *Held* that, on learning of the insolvency of the bank when it received his deposit, he was bound to elect promptly whether to rescind the contract for the alleged fraud or to affirm it, and that his filing his claim, subsequently ratified by the filing of the second claim, constituted an irrevocable election, by which he was precluded from also claiming a rescission.

In Bankruptcy. On review of decision of referee.

On October 14, 1904, J. P. Ansley deposited a check with D. C. Kenyon, the active member of the banking firm of D. C. & F. L. Kenyon, doing business as the Rushsylvania Bank, for which check he received a small sum in cash and the bank's certificate of deposit for the residue, which certificate Ansley expected to cash early in the week following. On the evening of the same day the members of the banking firm considered the bank's embarrassed financial condition, and on the evening of the following day, after consulting their attorney, decided to go into bankruptcy. On October 18th the firm was adjudicated bankrupt on a voluntary petition. On the day of Ansley's deposit, and before the bank's insolvency was determined, an entry of his transaction with the bank was made on its books, and the check was sent to a neighboring bank for clearance and paid. The deposit was made without any solicitation, promise, or representation on the part of Kenyon. On November 1, 1904, at the first creditors' meeting, Ansley filed proof of his claim, but did not attach thereto a copy of the certificate of deposit as an exhibit. The consideration named in his proof of the bank's indebtedness to him was "money deposited in their [Kenyons'] bank." On April 11, 1905, Ansley, as found by the referee, demanded of the trustees in bankruptcy a return of his deposit. On October 20, 1905, the referee notified him to attach his certificate of deposit to his proof of claim as an exhibit. Five days later he made a second proof of his claim, attaching thereto a copy of such certificate, which proof alleged that he deposited a check at the bank and received therefor the certificate of deposit and a small sum in cash. that the bankrupts are indebted to him in the sum named in the certificate, that they were insolvent as they well knew at the time of its issuance, and never acquired title to his money; and on the same day he filed his petition against the trustees to rescind his contract with the bank and recover the money represented by the certificate, alleging that the Kenyons, when they received his deposit, knew themselves to be insolvent, received his money with intent to cheat and defraud him, and that the title thereto never passed to them, and prayed an order directing the return of the money to him by the trustees. His claim was allowed by the referee on the same day. He has not at any time withdrawn either of his proofs of claim, nor has he at any time averred when he first learned of the bank's insolvency

and alleged fraudulent conduct, or that he did not know of the fraud charged when he proved his claim. Both proofs of his claim are still on file. On evidence adduced the referee found that D. C. Kenyon, and perhaps both Kenyons, must have known of the bank's insolvency at the time of Ansley's deposit; that Ansley learned on the day of the adjudication of the bank's insolvency of the facts on which he bases his charge of fraud, and that he did not elect to rescind in time, but proved up his claim; that he thereby made an election of remedy, on account of which he cannot maintain a separate independent suit to·rescind and recover the money deposited, and that the evidence does not sufficiently establish intent on the part of the Kenyons to cheat and defraud Ansley. The·case is here on a petition for review of the referee's decision.

John C. Hover, for J. P. Ansley.
A. Jay Miller, for trustees.

SATER, District Judge (after stating the facts as above). As a referee enjoys the opportunity of seeing and hearing the witnesses and has knowledge of the general administration of the estates which pass through his court, and is in frequent contact with the parties in interest, he is peculiarly qualified.to judge of the credibility of witnesses and the weight of the evidence. A judge will not therefore interfere with his conclusions on questions of fact, unless convinced that they are manifestly against the weight of the evidence. Rider, In re (D. C.) 96 Fed. 811; Southern Pine Co. v. Trust Co., 141 Fed. 802, 73 C. C. A. 60; Loveland, Bankruptcy (3d Ed.) 408.

The record is indefinite as to when Ansley first learned that at the time of his deposit the bank was insolvent, but, taking it as a whole, the referee was justified in finding that he knew of it as early as October 18, 1904. Ansley was required, on the discovery of the fraud alleged, to elect promptly to rescind his contract with the bank and seek recovery of his money, or to affirm his transaction with the bank .by making proof of his claim. The two remedies are not concurrent. He twice elected to affirm by twice proving and filing his claim. His demand on the trustees on April 11, 1905, for the return of his money, was made more than five months after his election of affirmance, and his filing a second proof of claim was a ratification of his first election. It is true that, when he made his second proof of claim, he also filed a petition to recover the amount of his deposit from the trustees; but he neglected to withdraw either of his proofs of claim, made no allegation as to the time of his discovery of the fraud charged against the bankrupts, retained at all times possession of the certificate of deposit, made no offer to surrender it, and requested, on the filing of his second proof of claim, that the referee, after having inspected the same, return the certificate to him. Having made proof of his claim and secured its allowance, he is, in the absence of inadvertence, fraud, or mistake, none of which are alleged, bound thereby, because, when a creditor makes proof of his claim against a bankrupt's estate, he stands in the position of a plaintiff at law, and becomes a party to the suit. Brandenberg, Bankruptcy, § 852; Prescott, In re, 5 Biss. 523, Fed. Cas. No. 11,389; Collier, Bankruptcy (6th Ed.) 437.

In Wiswall v. Campbell, 93 U. S. 347, 23 L. Ed. 923, Mr. Chief Justice Waite held:

"Every person submitting himself to the jurisdiction of the bankrupt court in the progress of a cause, for the purpose of having his rights in the estate determined, makes himself a party to the suit, and is bound by what is judicially determined in the legitimate course of the proceeding. A creditor who offers proof of his claim, and demands its allowance, subjects himself to the dominion of the court, and must abide the consequences."

Section 57 of the bankrupt act of July 1, 1898 (30 Stat. 560, c. 541 [U. S. Comp. St. 1901, p. 3443]), sustains the view that a creditor in making proof of his claim becomes a party to the suit. Lowell, Bankruptcy, § 216, states that:

"Though proof is not payment, it is an election to submit the debt proved to the jurisdiction of the court of bankruptcy. * * * When the law permitted a creditor to pursue his action at law, notwithstanding the bankruptcy as an alternative remedy, the court would restrain a creditor who had proved a debt from the prosecution of an action upon it."

In Standard Varnish Works v. Haydock, 143 Fed. 318, 74 C. C. A. 456, decided by the Sixth Circuit Court of Appeals, it appears that the creditor proved its claim, participated in the proceedings at a creditors' meeting, voted for the election of a trustee, and subsequently, on leave, withdrew its claim and filed an intervening petition setting forth that the goods on account of which it had filed and proved its claim as a creditor against the bankrupt had been purchased by the bankrupt upon false representations as to its financial condition, upon which the creditor relied in making the sale and which representations were known to the bankrupt to be false at the time of the sale. It also appears that the bankrupt at the time of the sale had no intention or reasonable expectation of paying for the goods, and prayed that the trustee be ordered to return such portion of the goods as still remained in his possession and that a claim for the balance be allowed against the estate. In that case it was held (page 319 of 143 Fed., page 457 of 74 C. C. A.):

"As the referee properly said in his opinion, it was open to the petitioner, the purchase having been procured by fraud, to elect whether to confirm the sale notwithstanding, and maintain the position of a creditor for the price, or to repudiate the sale and recover the goods. But the vendor must make his election promptly on discovery of the fraud. This is the settled law. Upon this principle Judge Ray held, in Hildebrant, In re (D. C.) 120 Fed. 992, that a vendor could not affirm the contract of sale as to part of the goods, and claim the price and disaffirm as to another part, and recover the goods in specie. And see Seavey v. Potter, 121 Mass. 297; and, having made his election in such circumstances, the vendor makes it once for all. Kennedy v. Thorp, 51 N. Y. 174; Moller v. Tuska, 87 N. Y. 166; Heller v. Elliott, 44 N. J. Law, 467; Carter v. Smith, 23 Wis. 497. The petition did not state when the petitioner became aware of the falsity of the bankrupt's representations of its solvency and of its fraudulent purpose, or whether it was before or after the petitioner proved its claim and participated in the proceedings as a creditor. And if, as it has in some cases been held, the burden of proof that the election was made with knowledge of the facts is upon the party who urges the estoppel, it would be difficult to resist the conviction that the circumstances attending the assignment and the adjudication of bankruptcy were sufficient to have shown the petitioner that the bankrupt in procuring the goods

156 F.—55

had made false representations in regard to its solvency. Not only did the petition make no claim that the petitioner was ignorant, at the time of proving its claim, of the facts in regard to the representations of the bankrupt and of its intention in making the purchase, but the facts stated by the referee are sufficient prima facie to support the conclusion that the petitioner had knowledge of the essential facts when it voted for the trustee. In these circumstances, the election of the petitioner to prove its claim as a general creditor was final. There is good ground for saying that it was too late for the exercise of an election after the petitioner had joined the general creditors in shaping and carrying forward the bankruptcy proceedings, and influencing their associates in their action. The suggestion that the proceedings probably would have been the same without the petitioner's co-operation cannot avail. The assumption of the position of a general creditor toward the assets would naturally be a strong inducement to the other creditors in pursuing the bankruptcy proceedings, for this would imply a sharing of the assets, and this result would be defeated if their associates were permitted to turn about and reclaim the assets in specie."

Reflecting on the question at issue are Baxter, In re (D. C.) 12 Fed. 72; Loveland, Bankruptcy, 405.

In Ormsby v. Dearborn, 116 Mass. 386, it was held that a creditor who proved his claim against an estate in bankruptcy for goods sold and delivered to the bankrupt could not maintain an action in replevin for the same goods by proof that he did not sell the goods to the bankrupt, because his election of remedy by proof of his claim was inconsistent with the suit in replevin. The two cannot stand together. If they could, the creditor might receive the whole or a part of the price of the goods in the bankruptcy proceeding, and by his suit in replevin regain and hold the goods themselves.

Under section 21 of the bankrupt law of 1867 (14 Stat. 526, c. 176) "proof of a debt is considered an election not to proceed against a bankrupt by action. Such proof operates as a statutable discontinuance of actions and suits in respect of the same claim and demand, and is a waiver of all other legal and equitable remedies in respect of the debt proved. In the English courts an application may be made for an injunction to restrain the action by a creditor who has proved, or to expunge the proof. Diack, Ex parte, 2 Mont. & Ayr. 675; Bernasconi, Ex parte, 2 Glyn. & Jam. 381." James, Bankruptcy, 97; Haxtun v. Corse, 4 Edw. Ch. (N. Y.) 585.

Under the same law in Parmlee v. Adolph, 28 Ohio St. 10, it was held that if a creditor, after he discovered the false and fraudulent character of representations made to him to induce a contract, proved up his claim in a court of bankruptcy, he would after that be precluded from a rescission of the contract, because such appropriation of the claim as his own after the discovery of the fraud would bar his right to such rescission. He would be acting with knowledge of his legal rights. In Everett v. Derby, 5 Law Rep. 227, decided under section 5 of the bankrupt law of 1841 (5 Stat. 444, c. 9), it was held:

"The proof of the debt is an election to proceed in bankruptcy, and is a conclusive bar to any further proceedings, in a suit at law or in equity for the recovery of the same debt." Bump, Bankruptcy (11th Ed.) 629.

If it be urged that the provisions of the bankrupt acts of 1841 and 1867 are more specific in defining the remedies of creditors than the

act of 1898, the answer is that those acts and the decisions under them recognize and enforce the principle that a creditor cannot at the same time in the same suit or in different suits pursue different remedies for relief on the same claim, and that he cannot at the same time affirm and disaffirm a contract induced by fraud. He must offer to rescind promptly. Parmlee v. Adolph, supra.

In Scott v. Walton, 32 Or. 464, 52 Pac. 180, it was said:

"A party who has been induced to enter into a contract by fraud has, upon its discovery, an election of remedies. He must either affirm the contract and sue for damages, or disaffirm it and be reinstated in the position in which he was before it was consummated. These remedies, however, are not concurrent, but wholly inconsistent. The adoption of one is the exclusion of the other. If he desires to rescind, he must act promptly, and return or offer to return what he has received under the contract. He cannot retain the fruits of the contract awaiting future developments to determine whether it will be more profitable for him to affirm or disaffirm it. Any delay on his part, and especially his remaining in the possession of the property received by him **under the contract, and dealing with it as his own, will be evidence of his intention to abide by the contract.**"

The fact that the referee notified Ansley to complete the proof of his claim by attaching the certificate of deposit as an exhibit did not nullify Ansley's original election of remedy. He ratified that election by filing a second proof. In the absence of an objection to his failure to attach the certificate of deposit as an exhibit to his original proof of claim, it would not have been error had the referee waived the attaching of the exhibit and allowed the claim. Carter, In re (D. C.) 138 Fed. 846; Loveland, Bankruptcy, 395. The views above expressed render unnecessary a discussion of St. Louis & S. F. Ry. v. Johnston, 133 U. S. 566, 10 Sup. Ct. 390, 33 L. Ed. 683, and other cases, cited to the point that D. C. Kenyon's knowledge of the bank's insolvency entitled Ansley to a rescission and recovery of his money.

For the foregoing reasons, the decision of the referee is affirmed.