## MONTICELLO HARDWARE CO. v. WESTON.

Circuit Court of Appeals, Fifth Circuit.
October 26, 1928.

No. 5289.

Jno. R. L. Smith, of Macon, Ga. (Smith & Smith and George A. Pindar, all of Macon, Ga., on the brief), for appellant.

J. R. Pottle and I. J. Hofmayer, both of Albany, Ga., and Benton Odom, of Newton, Ga. (Pottle & Hofmayer, of Albany, Ga., and

Benton Odom, of Newton, Ga., on the brief), for appellee.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge. In December, 1924, appellant shipped from Monticello, Ga., to the Sylvester Milling Company, of Sylvester, Ga., three cars of peanuts, as a cash transaction, drawing its draft for 80 per cent. of the proceeds, to which it attached a shipper's order bill of lading, with instructions to notify the consignee. The bill and draft were deposited with the First National Bank of Monticello, which forwarded the same to the Macon National Bank, of Macon, and the latter in turn transmitted them to the defendant bank. Upon receipt, the First National Bank of Sylvester detached and delivered to the milling company the bills of lading, without exacting payment of the drafts, and the latter, whose business was the buying, shelling, and selling of peanuts, obtained the nuts, which were mixed with those of other customers. On January 5 and 6, 1924, the milling company delivered to the defendant bank bills of lading for similar quantities of shelled nuts, whereupon the bank charged to its account the drafts of plaintiff. On the same days it drew its own drafts, the first for the sum of $1,595.16, and the second for $2,705.71, upon the Georgia National Bank, of Albany, Ga., and forwarded the same to the Macon National Bank. The latter in turn sent the drafts to the Federal Reserve Bank of Atlanta, which credited them to the Macon bank and charged the same to the Georgia National Bank, of Albany, to whom they were presented for payment on January 9 and 10, 1925, respectively. At the moment the First National Bank of Sylvester had sufficient funds on deposit with the Georgia National Bank to cover the drafts, but in the meantime the former had been closed by the Comptroller, and the Georgia National Bank refused payment. In the subsequent adjustment of accounts between the defendant receiver of the First National Bank of Sylvester with the Georgia National Bank, the former received sufficient funds to cover plaintiff's drafts.

The appellant seeks to fasten upon the funds in the hands of the receiver an equitable lien for the amount of its claim, but the latter contends that there was such a mingling of the three cars of nuts and their proceeds with others that there could be no sufficient identification to warrant a court of equity in granting relief. It is also claimed that the peanuts and their proceeds were not fully traced into the hands of the defendant bank, but we are of the opinion the evidence does show the payment to the receiver for all the peanuts shipped. It is true that both the nuts and their proceeds were mingled with those of other persons, but, as above stated, it is also shown they were all sold, paid for, and have been accounted for to the defendant bank.

In the case of Butler v. Western German Bank (C. C. A.) 159 F. 116, in dealing with a similar situation this court had occasion to say: "An examination of the cases showing the development of the doctrine of tracing funds or property throws light on this question. At first the equitable right of following misapplied money or other property into the hands of the parties receiving it depended upon the ability to identify it; the right attached only to the very property misapplied. This right was then extended to the proceeds of the property; that is, to that which was procured in place of it by exchange, purchase or sale. But the earlier cases held that if it became mixed with other property of the same kind so as not to be distinguishable, without fault on the part of the possessor, the equity was lost. But this view has been abandoned, and the doctrine now established is that confusion or the mixing of money or property with other money or property of the same kind does not destroy the equity, but converts it into a charge upon the entire mass, thereby giving to the party injured by the unlawful diversion a priority of right over the creditors of the possessor. This doctrine is now indisputably established. Richardson v. N. O. Deb. Red. Co., 102 F. 780, 42 C. C. A. 619, 52 L. R. A. 67, and cases there cited. What the courts set out to do from the first was to take the money—the identical money or property—from the wrongdoer, and give it to the true owner. When it could be identified, there was no hesitation; and, finally, when the identical coins or property could not be selected from the mass, the courts took out for the owner a like amount. We find no indication in the cases that the right extended beyond the amount of the property wrongfully converted or withheld." See, also, Southern Pine Co. v. Savannah Trust Co. (C. C. A.) 141 F. 802.

Our conclusion is that the same principle applies to the case at bar, and that the appellant is entitled to a decree for the amount of its claim without interest, with recognition of its equitable lien upon the funds in the hands of the receiver, but without prejudice to the rights of any other claimants similarly

674

situated, if there should not be sufficient funds to pay all in full.

For the reasons assigned, the decree of the lower court is reversed, with instructions to enter judgment for plaintiff in accordance with these views, but reserving to any other claimants, holding claims of equal rank, the right to assert the same in the distribution of the fund, should there not be sufficient to pay all in full.