## CHARLEROI SUPPLY CO. v. KELLY.
### No. 5970.

·District Court, W. D. Pennsylvania.
April 28, 1930.

David M. McCloskey, of Charleroi, Pa., and S. W. McGinness, of Pittsburgh, Pa., for plaintiff.

Reed, Smith, Shaw & McClay and George D. Wick, all of Pittsburgh, Pa., for defendant.

THOMSON, District Judge.

The Fayette Construction Company, being indebted to the Charleroi Supply Company, Mr. Keener, the treasurer of the construction company, went to the Fayette City National Bank with a deposit, consisting of four checks drawn on other banks, and $21 in currency, or a total of $718.20. Contemporaneously with the making of this deposit by Keener, he asked for a certified check, but was given, instead, a cashier's check, dated June 30, 1927, for $717.92, being drawn to the order of Charleroi Supply Company.

The Fayette Construction Company delivered the cashier's check to the Charleroi Supply Company, in payment of their debt, and the latter sent the check through banking channels, and it arrived at the Fayette City National Bank on July 6, 1927, and was thereupon protested and not paid because the Fayette Bank was out of funds, closing its doors on the evening of that day. The Charle-roi Supply Company thereupon brought suit on the said cashier's check, claiming a preference, assigning as its reason therefor that on the day the deposit was made by the Fayette Construction Company the Fayette Bank was insolvent, and known to be such by the bank, and that the deposit increased the assets in the hands of the receiver when the bank was taken over at the close of business July 6, 1927.

The insolvency of the bank at the time the deposit was made, is conceded, such insolvency being known only to two officers of the bank, both of whom were vice presidents; it being further conceded that the said officers, by their fraud, caused the insolvency of the bank.

The plaintiff is not the depositor who made the deposit, but simply the holder of a cashier's check, and the question involved here is, What relationship exists between the holder of the cashier's check and the bank upon which such check is drawn?

The position of the plaintiff is that Keener went to the Fayette Bank for the purpose of transmitting the funds included in his deposit to the plaintiff at Charleroi, for a particular purpose, namely, to pay his debt to the plaintiff, and it claims that the bank undertook to collect the outside checks included in the deposit and to transmit the entire amount to Charleroi. That in this manner the bank elected to and did accept the deposit, including the collections, and did attempt to transmit the funds by a draft or cashier's check.

It transpires that the proceeds of the outside checks were received by the bank on July 6, 1927, the day the bank closed. These items, it appears by the evidence, were credited by the Reserve Bank on July 5, 1927.

It is claimed by the plaintiff that the transaction between Keener, on one hand, and the officers of the bank who took charge of the transaction, comprise but one and the same single act, namely, the purchase of the draft or cashier's check with the proceeds of the deposit.

It is a general rule of law that a cashier's check is merely an evidence of debt on the part of the bank, and the holder is not entitled to a preferred claim upon the bank's becoming insolvent before it is cashed. Clark v. Chicago Title & Trust Company, 186 Ill. 440, 57 N. E. 1061, 1062, 53 L. R. A. 232, 78 Am. St. Rep. 294.

There the finding of the master was that the holder of the check was not entitled to a

preference, that the check was a mere evidence of indebtedness of no higher character than the check of any other person having a sufficient deposit in the bank to meet the amount of the check. This finding was approved by the court in this language: "The check was not drawn by a depositor against a deposit, but was simply an acknowledgment of an indebtedness on the part of the bank to the payee of the order. As between the bank and appellant, it was, in legal effect, the same as a certificate of deposit or a certified check."

If the Fayette Construction Company were the plaintiff here, the case would not appear to be difficult. This, because of the establishment of three important facts: First, the insolvency of the bank at the time the funds were received; second, the knowledge of such insolvency by the two vice presidents of the bank whose fraud caused the insolvency, and whose knowledge, therefore, became the knowledge of the bank; and, third, the bank's estate was increased by the funds so received, and the withdrawals from the mixed fund did not at any time reduce the balance to a sum less than the trust fund deposited.

In St. Louis Railway Company v. Johnston, 133 U. S. 566, at page 576, 10 S. Ct. 390, 393, 33 L. Ed. 683, Chief Justice Fuller, said: "This bank was hopelessly insolvent when the deposit was made,—made so, apparently, by the operations of a firm of which the president of the bank was a member. The knowledge of the president was the knowledge of the bank. Martin v. Webb, 110 U. S. 7, 3 S. Ct. 428, 28 L. Ed. 49; Manhattan Bank v. Walker, 130 U. S. 267, 9 S. Ct. 519, 32 L. Ed. 959; Cragie v. Hadley, 99 N. Y. 131, 1 N. E. 537, 52 Am. Rep. 9. In the latter case, it was held that the acceptance of a deposit by a bank irretrievably insolvent constituted such a fraud as entitled the depositor to reclaim his drafts, or their proceeds. * * * It is believed that no case can be found in the books holding that a trader who was hopelessly insolvent, knew that he could not pay his debts, and that he must fail in business, and thus disappoint his creditors, could honestly take advantage of a credit induced by his apparent prosperity, and thus obtain property which he had every reason to believe he could never pay for. * * * In the case of bankers, where greater confidence is asked and reposed, and where dishonest dealings may cause widespread disaster, a more rigid responsibility for good faith and honest dealing will be enforced than in the case of merchants and other traders; * * * a banker who is, to his own knowledge, hopelessly

insolvent, cannot honestly continue his business, and receive the money of his customers; and, although having no actual intent to cheat and defraud a particular customer, he will be held to have intended the inevitable consequences of his act, i. e., to cheat and defraud all persons whose money he receives and whom he fails to pay before he is compelled to stop business."

To the same effect is Richardson v. Olivier (C. C. A.) 105 F. 277, 53 L. R. A. 113; Cameron v. Carnegie Trust Company, 292 Pa. 114, 140 A. 768; Richardson v. New Orleans Company (C. C. A.) 102 F. 780, 52 L. R. A. 67; Monticello Hardware Company v. Weston (C. C. A.) 28 F.(2d) 672, 673 and other cases.

But the plaintiff here did not deal with the bank. They simply received, in payment of their debt, the cashier's check. It would therefore appear that the plaintiff and the bank stood only in a relation of debtor and creditor and that the preference, which would have been given to the Fayette Construction Company, cannot be claimed by the Charleroi Supply Company, the plaintiff.

The defendant, under the circumstances of the case, is therefore entitled to judgment.