**PEOPLE'S FIRST NAT. BANK OF QUITMAN et al. v. COE MFG. CO. et al.**

**No. 7033.**

Circuit Court of Appeals, Fifth Circuit.

Nov. 3, 1933.

Lee W. Branch, of Quitman, Ga., for appellants.

William Brunson, of Dublin, Ga., T. Baldwin Martin, of Macon, Ga., and Stanley S. Bennet, of Quitman, Ga., for appellees.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

In February, 1930, appellee Coe Manufacturing Company, retaining title to secure the unpaid purchase money, sold to one Reinschmidt, a manufacturer of staves, part of the heavy machinery for a veneer plant. To evidence and secure the unpaid purchase money, Reinschmidt executed his several notes, reciting the title retention agreement. These instruments were, in March, 1930, acknowledged before a notary public and filed for record. At about that time the machines were installed in a building, or shed, upon concrete foundations set up for the purpose of receiving them.

In March, 1933, Reinschmidt having defaulted, appellee Coe Manufacturing Company obtained a judgment in the District Court of the United States for the Middle District of Georgia foreclosing its lien, and sold the security at public vendue. Thereupon appellants, each holding a judgment against Reinschmidt, obtained one in June and two in July, 1932, filed their petition in that court for a rule absolute against the marshal requiring him to pay over to them as creditors, having liens "superior to the alleged lien of the mortgages made by Reinschmidt to the Coe Manufacturing Company," the proceeds of the sale.

One of the points they made was that the instruments foreclosed on were not mortgages, but conditional sale contracts invalid under the laws of Georgia against third persons unless attested as required by those laws. They argued that the original recordation was invalid because based not on an attestation at the time of signing, but on an acknowledgment subsequently made, and that the title having already passed to Reinschmidt, the recitations of the re-execution agreement were ineffective to reinvest the seller with it.

Another point was that the property at the time of the execution of the retention title agreement had become annexed to the realty and a part of it, so that it was not thereafter subject to be mortgaged as a chattel or sold as personal property. The District Judge rejected these contentions.

Appellants here, complaining of the judgment denying their petition, reassert the contentions made below.

Serving the same general purpose to secure debt, reservations of the title to or property in chattels as security for the purchase money thereof are in some jurisdictions by statute declared to be chattel mortgages,[1] and

---

[1] Article 5489, Vernon's Annotated Civil Statutes, Tex., provides: "All reservation of the title to or property in chattels, as security for the purchase money thereof, shall be held to be chattel mortgag-

315

in practically all jurisdictions such reservations, unless registered as required of chattel mortgages, are, when possession is delivered to the vendee, though good between the parties, invalid as to third persons as unregistered chattel mortgages are. The classes of persons as against whom unregistered chattel mortgages and reservations of title are invalid vary according to the public policy of each state as expressed in its statutes. In some, as in Texas,[2] and until 1931 in Georgia, they are invalid as to bona fide purchasers and as to lien creditors whether bona fide or not. In others, as it is now claimed is the case in Georgia under the Act of 1931, this is not so. They are invalid only to the same extent as unregistered deeds of bargain and sale. Whatever the absolute effect, however, ascribed to the failure to register, and whatever the provisions made for registration, they are usually considered to apply in substantially the same way and to the same extent to chattel mortgages and to reservations of title in chattels to secure the vendor.[3] These provisions have been liberally construed to effect the purposes of the law to facilitate the extension of credit without depriving the debtor of possession of the security, while at the same time preventing imposition or fraud upon the holder of the security and third parties.

es, and shall, when possession is delivered to the vendee, be void as to creditors and bona fide purchasers, unless such reservations be in writing and registered as required of chattel mortgages."

[2] Crews v. Harlan, 99 Tex. 93, 87 S. W. 656, 13 Ann. Cas. 863.

[3] By section 3318, Park's Ann. Civ. Code, security title reservations in sales of personal property while valid as between the parties whether in writing or not, to be valid against third parties must be in writing, "and the written contract of every such conditional sale shall be executed and attested in the same manner as mortgages on personal property." These instruments must be recorded within thirty days from their date "and in other respects shall be governed by the laws relating to the registration of mortgages." Section 3319, Park's Code. Of mortgages the Code declares no particular form is necessary. It is sufficient if the creation of a lien is clearly indicated upon specific property. "It must be executed in the presence of, and attested by, or proved before, a notary public or justice of any court in this State * * * and recorded." Section 3257, Park's Code.

By another section of the Code, § 3259, provision is made for the re-execution or renewal of any mortgage which has not been recorded, and for notice from the date of the re-record.

Further evidencing the public policy of Georgia, that the same methods should obtain in regard to, and the same effect follow, the failure to register all security transactions, the Act of August 27, 1931, provided in terms that from and after its passage written instruments for security might be attested, acknowledged, or probated as deeds of bargain and sale, and that the effect of failure to record any such security instrument should be the same as the effect of failure to record a deed of bargain and sale. Georgia Laws of 1931, p. 153.

The reason for this is not far to seek. The filing or recording of a mortgage or a contract for title retention is a substitute for the possession of the lienor or security title holder. By affording notice to persons dealing with the mortgagor or vendee, it enables him to have possession while protecting from fraud and imposition alike the holder of the security and those who deal with his debtor just as retained possession would. When, therefore, as in this case, it appears that treating the retention title contract as a chattel mortgage, the seller has given notice of it by first causing it to be acknowledged and recorded, and later to be re-executed, attested, and recorded, subsequent judgment lien creditors of the vendee ought to present some more substantial reason for inserting their after-acquired claim between the seller and his property than that the title retention contract was originally acknowledged instead of attested for record. Webb v. United-Am. Soda Fountain Co. (C. C. A.) 59 F.(2d) 329; something more than that the re-execution agreement was ineffective because the title had already passed. Saranac Machine Co. v. Heyward, Trustee (C. C. A.) 293 F. 499.

Especially is this so when, as here, the claimants' liens were obtained in 1932, after the Act of 1931 had subordinated involuntary liens to mortgages and other security instruments. Donovan v. Simmons, 96 Ga. 340, 22 S. E. 966; Webb v. United-American Soda Fountain Co. (C. C. A.) 59 F.(2d) 329.

Appellants' argument that the re-execution agreement has no bearing on the case because foreclosure proceedings were based not on it, but on the contract of February 7th, avails them nothing, for their suit for the proceeds affirms the validity of the sale, leaving only the question of who is best entitled to the proceeds. That question is settled by a determination whether the voluntary liens which appellee holds are superior to the involuntary ones asserted by appellants. We think they are.

We have examined and given consideration to the Georgia cases cited by appellants, Merchants' Bank v. Cottrell, 96 Ga. 169, 23 S. E. 127; Olmstead v. Carolina Portland Cement Co., 30 Ga. App. 126, 117 S. E. 255; Cunningham v. Cureton, 96 Ga. 489, 23 S. E. 420; Harp v. Patapsco Guano Co., 99 Ga. 752, 27 S. E. 181. We find nothing in them at war with the views here asserted.

Appellants' subordinate position that the machinery became attached to the realty in such manner as to defeat the lien and in-

validate the foreclosure, requires little comment. Apart from the fact that they find themselves in the wholly untenable position, by claiming the proceeds of the foreclosure sale, of asserting that the lien was at once effective and ineffective to support the foreclosure, the facts of this case put it beyond question that there was no such attachment to the realty as to defeat the retained lien. Except in extreme cases of a complete merger with the realty by incorporation in it so that the chattel may not be removed without material injury to the realty itself, the intention manifested by a sale with title retained, that the property is to remain personal property until the debt is satisfied, may not be defeated at the suit of a subsequent involuntary lienor. Lasch v. Columbus Heating & Ventilating Co., 174 Ga. 618, 163 S. E. 486; Wheat v. Otis Elevator Co. (C. C. A.) 23 F.(2d) 152; Anglo-American Mill Co. v. Dingler (D. C.) 8 F.(2d) 493; Holt v. Henley, Trustee, 232 U. S. 637, 34 S. Ct. 459, 58 L. Ed. 767.

The judgment is affirmed.