## ROWE v. SPENCER.

Spencer and Humphrey entered into an agreement, by the terms of which Spencer was to sell to Humphrey a certain pair of mules at a given price, a specified part of which Humphrey was to pay in cash, and for the balance he was to give his two promissory notes, with his father as surety, to Spencer in equal amounts, maturing at designated times. The notes were to contain a stipulation that title to the mules was to remain in Spencer until the notes should be fully paid. The notes were prepared in accordance with the agreement; but as no official was present to attest their execution, and as Humphrey's father was not present, it was agreed that Humphrey should take them to the county where he said he resided, and there execute them, with his father as surety, in the presence of an officer, and return them by mail to Spencer. At the time of this transaction Humphrey made the cash payment and Spencer delivered to him the possession of the mules. Subsequently, and on the same day, Humphrey traded the mules to Rowe for a fair consideration which he received from Rowe at the time, and delivered to him the mules. Rowe at the time had no notice of the agreement between Spencer and Humphrey. The notes were executed by Humphrey the next morning before a notary public, who officially

attested them, and they were delivered to Spencer that day, Humphrey's father not having signed them. Three or four days thereafter Spencer informed Rowe of the agreement between Humphrey and Spencer, and of the latter's claim of title to the mules, and Rowe a short time afterwards disposed of them to his own use. The notes were recorded within less than thirty days after their execution. *Held*, that Rowe, as against Spencer, obtained no title to the mules.

AUGUST 14, 1913.

Trover. Before Judge Daniel. Gwinnett superior court. April 30, 1912.

Spencer brought trover against Rowe. There was a verdict for the plaintiff. The defendant was refused a new trial, and he excepted. The testimony of the plaintiff was as follows: On June 19, 1906, he agreed to sell the mules in controversy to one Humphrey, for the price of $450, of which the sum of $100 was to be paid cash, and for the balance Humphrey was to give Spencer two promissory notes, each for $175, payable respectively September 1, and November 1, 1906. Title to the mules was to be retained by Spencer until the entire purchase-price should be paid. This agreement was entered into at Flowery Branch, Hall county, this State. At that place and on the day of the agreement two promissory notes were written or filled out, embodying all the terms of the agreement, as to date, times of payment, amounts to be paid; and each note contained the following stipulation: "This note having been given to said E. A. Spencer, as per contract for two black mare mules named Mame and Maud, it is hereby agreed that the ownership of title to said mules shall remain to said E. A. Spencer until this note is fully paid." Humphrey made the cash payment. The notes were written out in accordance with the agreement at Flowery Branch, where the plaintiff was engaged in business, and where the transaction took place. As no officer was there to witness Humphrey's signature to the notes, and as his father lived at Buford, Gwinnett county, where plaintiff was informed by Humphrey he also resided, it was agreed between plaintiff and Humphrey that the latter should take the notes to Buford, where he, and his father as surety, would execute them in the presence of an officer, and that Humphrey would then return them by mail to plaintiff. In accordance with this agreement, the notes were given to Humphrey for the purpose just stated, and plaintiff also delivered to him the possession of the mules. Humphrey left Flowery Branch, with the notes and the mules in his possession,

about noon on June 19, 1906. The next day plaintiff received the notes by mail, which appeared to have been signed by Humphrey in the presence of a notary public, but had not been signed by Humphrey's father. Within two or three days thereafter, the plaintiff went to Buford to investigate the matter, and ascertained that Humphrey had sold the mules to the defendant Rowe. Plaintiff thereupon exhibited to the defendant Humphrey's notes, and at the same time informed the defendant that title to the mules was in him, the plaintiff. The notes were put in evidence by the plaintiff. They were dated June 19, 1906, and contained a reservation of title to the mules in Spencer. They appeared to have been executed by Humphrey in the presence of a notary public, and were filed for record and recorded in Gwinnett county on July 14, 1906. They were not signed by Humphrey's father. The notary testified that Humphrey signed the notes in his presence in Buford. He could not remember the date, but did remember that the notes were executed "late one evening or early one morning," as he recalled that he had to take them to the front of the store in order to get sufficient light to write his signature. He further testified: "Charley Humphrey was driving a pair of gray ponies at the time. Mr. Rowe had previously had these ponies in his possession. . . I had never seen Humphrey driving these ponies before this time."

The defendant admitted in his answer that he purchased the mules in controversy from Humphrey on June 19, 1906; and his testimony was to the following effect: He gave Humphrey, in exchange for the mules, a pair of ponies, a set of harness, a buggy-pole, and $100 in cash, all being of the value of $425. He traded with Humphrey for the mules about 6:20 o'clock p. m., Eastern time, which was an hour, or an hour and a half, before sunset. At the time of this trade, he did not know from whom Humphrey had bought the mules, and had no notice of the contract of sale between Humphrey and Spencer. Humphrey never drove the ponies given him in exchange for the mules until the day following this trade. Witness sold the mules a short time after he learned that plaintiff claimed title to them, and before this action was brought.

*J. A. Perry* and *J. V. Pool,* for plaintiff in error.

*I. L. Oakes* and *E. O. Dobbs,* contra.

Fish, C. J. (After stating the foregoing facts.) "Whenever personal property is sold and delivered with the condition affixed to

the sale that the title thereto is to remain in the vendor of such personal property until the purchase-price thereof shall have been paid, every such conditional sale, in order for the reservation of title to be valid as against third parties, shall be evidenced in writing, and not otherwise. And the written contract of every such conditional sale shall be executed and attested in the same manner as mortgages on personal property; as between the parties themselves, the contract as made by them shall be valid and may be enforced, whether evidenced in writing or not." Civil Code, § 3318. "Conditional bills of sale must be recorded within thirty days from their date, and in other respects shall be governed by the laws relating to the registration of mortgages." Ib. § 3319. Mortgages on personal property must be executed in the presence of, and attested by, or proved before, a notary public or judge of any court in this State, or a clerk of the superior court, and recorded. Ib. § 3257. A mortgage on personalty must be recorded in the county where the mortgagor resided at the time of its execution, if a resident of this State. Ib. § 3259. According to the undisputed evidence, all the requirements of the above-quoted sections of the code were complied with, relatively to the notes given by Humphrey to the plaintiff for the balance of the purchase-price of the mules bought by Humphrey from the plaintiff, there being in the notes a condition that the title to the mules should remain in the plaintiff until the notes should be fully paid. The notes were, of course, in writing; they were executed in the presence of and attested by a notary public, and were recorded within less than thirty days from the date of their execution. There was, moreover, ample evidence to sustain a finding that the notes were recorded in the county where Humphrey resided at the time of their execution, which the jury necessarily found to be true in rendering a verdict for the plaintiff,—the court having properly instructed them on this point. There were some circumstances testified to by the defendant himself, which seemingly might have authorized the jury to find that at the time he traded for the mules he had notice sufficient to excite attention, and to put him on inquiry as to Humphrey's title to them, or as to who had legal title, and that such inquiry would probably have developed the fact that the title was in the plaintiff; but in the view we take of the case, we have not deemed it necessary to set forth such circumstances. Aside from the matter just re-

ferred to, and considering the evidence from the viewpoint most favorable to the defendant, how stands the case? This way:—Defendant traded with Humphrey for the mules on the same day the latter contracted to purchase them from the plaintiff, and within a few hours after that transaction. At the time of his trade with Humphrey, the defendant had no notice of the plaintiff's title to the mules, and the property given by defendant in exchange for them amounted to a fair price. The agreement between the plaintiff and Humphrey, or rather so much thereof as remained to be executed, had been reduced to writing—in the form of the two notes,—which written agreement Humphrey had in his possession at the time he traded the mules to the defendant, which possession was for the purpose—and in pursuance of the agreement with the plaintiff—of executing them before an officer, and thereafter returning them by mail to the plaintiff. At the same time Humphrey had possession of the mules also with the consent of the plaintiff, as Humphrey was taking the notes for the balance of the purchase-price to Gwinnett county to be properly executed by him and his father as surety, and to be returned to the plaintiff. The notes were duly executed by Humphrey alone, early the next morning after the trade between defendant and Humphrey, and were received that same day by the plaintiff, and were recorded within less than thirty days after their execution. Taking all this to be true, did the defendant obtain a valid title to the mules, or one superior to that of the plaintiff? The view of the case just presented does not show a case where a vendor sold and delivered personalty under an agreement, entered into at the time of the sale and delivery of the property, that the vendee would, at a time subsequent to the completion of the sale, execute and deliver to the vendor a note for the purchase-price of the personalty, with a condition that the title to the personalty should remain in the vendor until the note should be paid. In section 3318 of the Civil Code, where personalty is *sold* and delivered with a condition affixed to the sale that the title to the property is to remain in the vendor until the purchase-price thereof shall have been paid, in order for the reservation of title to be valid against third parties it must be in writing and the contract executed and attested as the statute requires in cases of chattel mortgages, and recorded within thirty days after the date of the sale. This statute contemplates a sale

and delivery of the property in pursuance thereof. The general rule is: "Where the buyer is by the contract bound to do anything as a condition, either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition be fulfilled, even though the goods may have been actually' delivered into the possession of the buyer." 1 Benjamin on Sales (6th Am. ed.), § 366, p. 359. This principle has been recognized by this court in several cases, wherein it was announced that "If personal chattels be sold upon the express condition that they are to be paid for on delivery, and they are delivered upon the faith that the condition will be immediately performed, and performance is refused upon demand in a reasonable time, no title passes to the buyer." *Bergan* v. *Magnus,* 98 *Ga.* 514, 516 (25 S. E. 570) ; *Wilson* v. *Comer,* 125 *Ga.* 500 (54 S. E. 355, 114 Am. St. R. 245) ; *Susong* v. *McKenna,* 126 *Ga.* 433 (55 S. E. 236) ; *Starnes* v. *Roberts,* 128 *Ga.* 718 (58 S. E. 348) ; *Walker* v. *O'Neill Mfg. Co.,* 128 *Ga.* 831 (58 S. E. 475). In these cases, however, the action was by the vendor against the vendee, and the interest of a third person was not involved, except in *Bergan* v. *Magnus,* where the contest was between the vendor and an attaching creditor of the vendee, it not appearing, however, that the vendee had obtained possession of the goods with the consent of the vendor; and in *Walker* v. *O'Neill Mfg. Co.,* where the contest was between two parties, each claiming to have purchased the article in controversy from the same vendor. In *Wheeler & Wilson Mfg. Co.* v. *Bank,* 105 *Ga.* 57 (31 S. E. 48), it was held: "Where a purchaser agrees to pay for goods on delivery, either in cash at a named discount or by note due in six months, the contract of sale is conditional, and the payment of the cash or the giving of the note is a condition precedent to the passing of title. Where, however, the goods are delivered by the seller and left for some time in the possession of the purchaser, no steps for their reclamation being taken by the seller, and the purchaser mortgages them to an innocent third party, such conduct may amount to a waiver of the condition and operate to pass the title to the goods into the purchaser." It was there further held: "Even if, in this case, the condition was not waived, still, under the provisions of our code, the reservation of title was not valid as against a third party without notice, the conditional contract of sale having been neither executed and attested nor re-

corded as provided by law." In that case the contest was between the vendor and the subsequent innocent mortgagee. In the opinion it was said: "An absolute and unconditional delivery of the goods may waive the reservation of title, and a vendor can not rely upon his reservation of title as against innocent third persons where they have been injured by his waiting an unreasonable length of time after breach of the condition precedent, before taking any steps to reclaim his goods." It is obvious that the first ruling made in that case necessarily carries with it the implication that had the vendor taken steps to reclaim his goods within a reasonable time after breach of the condition precedent, there would have been no waiver of his title, even as against an innocent mortgagee to whom the goods may have been mortgaged by the purchaser prior to any move taken by the seller for the reclamation of the goods. The second ruling expressly held that where a purchaser agrees to pay for goods on delivery, either in cash or by note maturing at a given time, such transaction falls within the provisions of the Civil Code, § 3318, as to conditional sales.

In *Penland* v. *Cathey,* 110 *Ga.* 431 (35 S. E. 659), it was said: "The evidence in the record makes a clear case of such a conditional sale of personal property as is contemplated in section 2776 [now 3318] of the Civil Code. The property sold and the price to be paid were ascertained and determined; there was no act of the vendee to be performed before the sale was completed; and the delivery was unconditional." The language, "there was no act of the vendee to be performed before the sale was completed," implies, of course, that had there been some act of the vendee to be performed before then, the transaction would not have been such a conditional sale of personal property as is contemplated by the section of the code referred to.

Even if none of the cases to which we have referred is in principle controlling when applied to the facts of the case now in hand, under its own facts, the plaintiff's title was superior to any rights of the defendant obtained by the trade he made with Humphrey. This is true for the reason that at the time the defendant traded with Humphrey the contract between the plaintiff and Humphrey rested in fieri—as one of the essential acts to be done by Humphrey in order to complete the contract between him and the plaintiff remained unperformed, that is, the proper execution of his notes for

the balance of the purchase-price of the mules and the delivery of the notes to the plaintiff. According to the agreement between plaintiff and Humphrey, this most important act was to be done as a part of the contract for the purchase of the mules by Humphrey, before there should be a complete sale; and under the evidence it was clearly the intention of both Humphrey and the plaintiff that this act should be performed by Humphrey at once or presently. The only reason that it was not done at the time the notes were written, according to the undisputed evidence, was that there was no officer before whom the notes could be executed in accordance with the statute. Moreover, they were executed early the next morning and on the same date returned to the plaintiff. There was no delay in the execution and return of the notes—no laches on the part of the plaintiff; and we are decidedly confident that the defendant did not obtain a valid title to the mules by his trade with Humphrey made during what we may call the making of the contract for the sale of the mules by the plaintiff to Humphrey, although the latter was in possession of the mules under the circumstances stated at the time he traded them to the defendant.

Counsel for plaintiff in error strongly relies upon the case of *Harp* v. *Patapsco Guano Company, 99 Ga.* 752 (27 S. E. 181). That case, however, is not binding authority for anything contrary to what we have here ruled, and for two reasons, namely: (1) only two Justices participated in the decision; and (2) whatever was said in the opinion contrary to our ruling here was purely obiter. Moreover, the facts of that case were essentially different from those in the case now in hand. The judgment there under review by this court was the overruling of a certiorari by the judge of the superior court, the case having been originally tried before a jury in a magistrate's court. We make the following quotations from the opinion in that case: "An execution in favor of the Patapsco Guano Company against Gouch, founded on a judgment rendered February 9, 1895, was, on October 15 of that year, levied upon the mule, which was claimed by Harp. . . From the evidence as set forth in the magistrate's answer, it appears that Gouch bought the mule from Harp in January, 1895, under a parol contract, by the terms of which the title was to remain in Harp until the mule was paid for, and the mule was immediately delivered to Gouch in pursuance of this contract. So far as can

be gathered from the answer to the certiorari [which was not traversed], the trade between Harp and Gouch was complete when the delivery of the mule took place. It does appear, as an independent fact, that Gouch subsequently [May 23, 1895, some four months after his parol contract with Harp] executed and delivered to Harp a promissory note for the purchase-money of the mule, reciting that Harp had reserved the title, . ´ . but the evidence, as reported by the magistrate, contains no intimation that the note and mortgage were given in pursuance of any agreement or stipulation made at the time of the sale, and therefore constituting a part of the original contract. The petition for certiorari does so allege; but in this respect it is not verified by the answer. . ·· Under the facts as set out in the magistrate's answer, which must control our decision in the case, it seems clear that the contract of sale between Harp and Gouch was . . complete on the day the latter took the mule into his possession, without reference to the subsequent execution and delivery of the note and mortgage. In this view, it is obvious that the parol reservation of title in Harp amounted to nothing, as affecting the rights of third persons." Even on the theory set up in the petition, which was not verified by the answer of the magistrate, there was no written agreement at the time of the transaction between Harp and Gouch that the title to the mule should remain in Harp, and no such agreement was executed for some four months after such transaction, and it does not appear that it was attested by an officer and recorded. In the case at bar, the terms of the contract for sale were reduced to writing, in the form of the two notes, at the time the contract was entered into, and were made an essential part thereof, which notes were to be presently executed, as is necessarily inferable from the undisputed evidence of Spencer.

We have not overlooked the case of *Schofield* v. *Woodward,* 137 *Ga.* 65 (72 S. E. 509), wherein it was held: "Where one sells and delivers personalty to a contractor, and retains title thereto, but before the writing evidencing the contract retaining title in the seller is recorded or executed the contractor uses the personalty in the permanent improvement of the real estate of another, the seller can not recover such personalty from the latter. This is true though the contract between the owner of the real estate and the contractor for the improvement of the former's property has not been com-

pleted, and though the real-estate owner has not paid the contractor the full contract price for the improvement of the property, at the time the contract retaining title to the property in the seller is recorded." This ruling rests upon the principle that the material sold to the contractor was evidently intended by both parties to the sale to be used in the erection of a building, and, after being so used, it became a part of the realty, and could not be recovered as personalty.

This opinion sufficiently covers the grounds of the motion for new trial and renders it unnecessary to specifically deal with them.

*Judgment affirmed. All the Justices concur, except*

LUMPKIN, J., dissenting. I am unable to concur in the decision in this case. By the Civil Code, § 3318, it is required that, to render a reservation of title effectual against third persons, the contract must be in writing and properly attested. To hold that a delivery under a sale of personalty could be made by the seller to the purchaser, with an agreement on the part of the latter to go to another town and execute a note and obtain a surety thereon, and that a day's interval could elapse, and the seller could still retain title as against a third party acting in good faith and without notice, would be to destroy the very purpose of the statute. This is not the case of a seller who does not make a complete delivery. He made delivery, not for examination, or the like, or on any agreement that the buyer should hold as a bailee until execution of the written contract, but in pursuance of the contract of sale. The seller merely delivered the property to the purchaser and trusted to the latter to execute and return a proper written contract. If the decision should be rested on the theory of a parol agreement that title should not pass, it would be in the teeth of the statute. If it should be rested on the idea of allowing the purchaser a reasonable time to execute and return the note, what is a reasonable time? Does each case stand on its own facts? Suppose the desired security were out of the way, would the title be in suspense till his return, or a reasonable time to seek to procure his signature? Or if the purchaser should be taken sick, would he have a reasonable time to get well? and in the meantime would the public take the chances, in case of buying the property? The fact that no security was in fact obtained in this case makes no difference. The purchaser was allowed time in which to endeavor to obtain one.

Under the old law, title could be reserved by parol, though the property was delivered to the purchaser. The great frauds and dangers accruing against a purchaser from one clothed with the apparent title caused the enactment of the law embodied in the section of the code above cited. To hold it subject to parol agreements, or the lapse of a reasonable time after delivery, would soon destroy the purpose of the law. The statute is clear, simple, and imperative. If, instead of following it, a seller delivers possession to the purchaser and allows the latter to carry the property away, on a promise to execute and return a contract later, he takes the chances. His plain right is not to deliver the property until the statutory contract is executed. Whether the reasoning in *Harp* v. *Patapsco Guano Co.*, 99 *Ga.* 752 (27 S. E. 181), was absolutely necessary to the decision or not, it is strong, sound, and not easily answered. See also Brundage *v.* Camp, 21 Ill. 330.

The analogy sought to be drawn between this case and those involving sales for cash is not good. The present case rests on a mandatory statute. Where a statute requires a contract to be reduced to writing and executed in a certain way, a parol agreement to do it in that way is not a compliance with the statute. Without our statute, the decision of the majority of the court would be right. With such statute, I think the decision is wrong. An unexecuted writing is no compliance with the statute.