## ANGLO–AMERICAN MILL CO. v. DINGLER et al.

(District Court, N. D. Georgia. N. D. September 26, 1925.)

**1. Sales ⊜⇒454—Contract held one of conditional sale.**

A contract called therein a license to use certain mill machinery, but under which the so-called licensee agreed to be responsible for the machinery after its shipment and to keep it insured, and gave his notes for the price which the licensor was authorized to declare due and called on any default, and under which the licensee was to receive a bill of sale on full payment of the notes, *held* a contract of conditional sale.

**2. Sales ⊜⇒451—Law of place where contract originated held applicable.**

A contract, originating in Georgia, for the conditional sale of machinery to be placed and used in a mill in that state, though delivery was to be to a carrier in Kentucky, *held* a Georgia contract.

**3. Sales ⊜⇒472(2)—Conditional sales must be recorded 30 days after delivery.**

Under Civ. Code Ga. 1910, §§ 3318, 3319, providing that, "whenever personal property is sold and delivered" with a condition that title shall remain in the vendor until the purchase price is paid, to be valid as against third parties, the contract must be in writing, and that "conditional bills of sale must be recorded within thirty days from their date" the contract must be recorded within 30 days after delivery of the property sold, which is the time when the sale becomes effective under the terms of the statute.

**4. Sales ⊜⇒470—Conditional sale held consummated by delivery.**

That a conditional sale contract contains a further condition that, if the article sold did not comply with a warranty after 30 days' trial, the contract should be void, did not make delivery thereunder a mere bailment until the expiration of 30 days, but such delivery was in consummation of the sale, which was subject to defeat only by the condition subsequent.

**5. Mortgages ⊜⇒133—Machinery held not to pass as appurtenance.**

Under Civ. Code Ga. 1910, § 3621, providing that "machinery, not actually attached, but movable at pleasure is not a part of the realty," heavy mill machinery not attached to the building, but held in place by its own weight, *held* not to pass under a mortgage of the realty and appurtenances, which did not mention the machinery.

**6. Bankruptcy ⊜⇒209(½)—Seller in conditional sale contract must elect whether to cancel or enforce lien.**

The seller of machinery to bankrupt under a conditional sale contract, which had been partly paid for before the bankruptcy, *held* required to elect whether to cancel the contract and restore the payments received as a condition to reclaiming the property, or to enforce a lien on the property for the remainder of the debt.

In Equity. Suit by the Anglo-American Mill Company against W. H. Dingler and others. Decree deferred to permit amendment of bill.

Beck & Beck, of Griffin, Ga., and Mayson & Johnson, of Atlanta, Ga., for plaintiff.

Lovejoy & Mayer, of La Grange, Ga., for defendants.

SIBLEY, District Judge. The case is submitted for decree on a stipulation that the facts alleged in the petition and answer are true, and on an agreed statement of additional facts. An outline of them, stated in order, is: On December 17, 1921, at Griffin, Ga., A. W. Edwards executed a written contract, termed a "license," to use and buy certain patented flour mill machinery; title not to pass until payment in full in cash of stated sums. This was, by its terms, subject to acceptance by the licensor, Anglo-American Mill Company, at Owensboro, Ky. Such acceptance was had January 27, 1922. On February 6, 1922, the machinery was shipped by railroad from Owensboro to Edwards at Griffin, Ga., and arrived February 13th. On February 15th, the attesting witness, not an officer, prepared the contract for record by making probate of its due execution. The machinery was taken out by Edwards on February 17th, and placed in the mill building February 18th. On February 23d he borrowed $4,000 from Dingler and executed a deed to secure the loan, which conveyed 3 tracts of land and mill building with all appurtenances in fee simple; the deed being recorded on the same day. On March 1st, the machinery had been installed and was put in operation. On March 17th the contract was recorded, and on March 20th the notes required by it to be given, after a trial for not exceeding 30 days, were executed. Edwards failed to pay his notes, and is now in bankruptcy, having released all his right and title to the mill, real estate, and machinery to Dingler, after knowledge of all the facts. The petitioner seeks the recovery from Dingler and Edwards of the machinery as its property, with other equitable relief. The controlling questions are: (1) Was the contract a mere license to use, not requiring record, or was it a sale with retention of title? (2) If the latter, was there such record as effectuated against third persons the retention of title under the Georgia statute? (3) Does the security deed of Dingler convey this machinery as a part of or appurtenant to the land?

[1] 1. Though the contract is elaborate in its effort to make the transaction appear to be a mere license to use a patented article, its employment of the terms "license," "license contract," "licensor," and "licensee" cannot alter the real essence of the transaction as a sale. It undertakes to reserve title "until paid for in full in cash," and provides that on certain contingencies "all subsequent payments shall, if licensor shall so elect, become due and payable forthwith," and that "licensor may pursue all legal remedies to enforce payment hereunder," and finally "when all payments and interest herein specified shall have been made in full in cash, the licensor will give to licensee a bill of sale for said machinery and a perpetual license to use said mill under the above-mentioned patents." The stipulation further is: "The following described property, delivered f. o. b. cars at factories where manufactured, same to be at the risk of licensee during shipment," and "the loss, injury, or destruction of said property shall not operate in any manner to release said licensee from payment as provided herein, or on the notes given." "Licensee agrees to be responsible for said property," and is bound to insure it against loss by fire "from the time it leaves the premises of licensor * * * for account of whom it may concern." These stipulations show too plainly for dispute that the so-called licensee was buying the machinery and liable for its agreed price, notwithstanding its destruction, from the time it left the seller's premises; title being retained to secure the purchase money, and the right to use the purchased article, though patented, being but the usual incident of the sale of such an article. That the petitioner so regarded the matter appears from its preparation of the contract for record as a contract of conditional sale, and its record thereafter. Indeed, paragraph 5 of the petition, though inadvertently perhaps, alleges: "Your orator shows that under the terms of said contract the same was *sold* on the installment plan; that is, part cash and the balance in 18 monthly notes," etc.

[2, 3] 2. Though the machinery bought was to be delivered to the carrier in Kentucky, by which delivery title would generally pass to the purchaser, the contract, nevertheless, originated in Georgia, provided that the property bought should be shipped into Georgia and there held and used for a long period under the terms of the contract. It was so far to be performed in Georgia as to render it clearly a Georgia contract and subject to the laws of that state requiring its record. The Georgia Statute reads (Georgia Civil Code 1910, § 3318):

"Whenever personal property is sold and delivered with the condition affixed to the sale that the title thereto is to remain in the vendor of such personal property until the purchase price thereof shall have been paid, every such conditional sale, in order for the reservation of title to be valid as against third parties, shall be evidenced in writing, and not otherwise. And the written contract

of every such conditional sale shall be executed and attested in the same manner as mortgages on personal property; as between the parties themselves, the contract as made by them shall be valid and may be enforced, whether evidenced in writing or not."

Section 3319:

"Conditional bills of sale must be recorded within thirty days from their date, and in other respects shall be governed by the laws relating to the registration of mortgages."

This contract was recorded March 17th, within 30 days from February 15th. The statute says that conditional bills of sale must be recorded within 30 days of their date. The date, not of the sale, but of the bill of sale; that is, the writing evidencing its terms, are the literal words, and this literal meaning was followed In re Gosch (D. C.) 121 F. 602. The ruling, however, was reversed by the Circuit Court of Appeals, 126 F. 627, 61 C. C. A. 363, and the date of the consummation of the sale by delivery such as would have passed title save for the reservation thereof, is held to be intended by the statute. To the reasons for this conclusion there given may be added these: The main statute deals only with cases where personal property is *sold* and *delivered*," with the condition affixed that the title is to remain in the vendor. Until *delivery*, the case, in the mind of the Legislature, has never occurred to which the law is to apply. On delivery, and then only, is there any need even of a writing, and surely no need of its record. Also, if the date of the writing were the vital point, there is nothing in the statute to hinder the making of the writing to "evidence" the sale a long time after the delivery of the property, and then recording it within 30 days from its date. No one would contend that to be a permissible construction as against an innocent purchaser in the meanwhile. The Supreme Court of Georgia has not authoritatively passed on this point, and the holding in the Gosch Case is binding on this court.

[4] When then did delivery of the personal property sold occur? Manifestly on delivery to the carrier for the purchaser, when, by express agreement, it became at his risk. This is controverted by the contention that the machinery was shipped on 30 days' trial, and there was no sale until the trial was had and the mill accepted. True the Georgia statute does not apply to conditions precedent and subsequent in a sale other than the one condition that title shall not pass until payment, when nothing else hinders the passage of it. This is plain from Rowe v. Spencer, 140 Ga. 540, 79 S. E. 144, 47 L. R. A. (N. S.) 561, and cases cited. But this contract does not show a delivery on approval which, until approval, is a mere bailment, but a delivery in consummation of a sale with a warranty of performance and of complete satisfaction, with the right on nonperformance or dissatisfaction to disaffirm the sale within 30 days and send the mill back "which shall cancel and make void this license contract." That is the language of a condition subsequent, which never happened. The line is often narrow between a so-called sale on approval, where no title passes until approval, and a sale with a condition for return on disapproval, in which title does pass until the sale is disaffirmed. I think this contract is of the latter kind. 35 Cyc. 112; 24 R. C. L. §§ 720, 721; 1 Michie on Sales, 677; Sturm v. Boker, 150 U. S. 312, 14 S. Ct. 99, 37 L. Ed. 1093; Furst v. Commercial Bank, 117 Ga. 474, 43 S. E. 728; Newburger v. Hoyt, 86 Ga. 513, 12 S. E. 925. This contract, therefore, should have been recorded within 30 days from February 6th. The record afterwards did not affect the rights of Dingler acquired in the meantime, without notice; he having promptly recorded his own security.

[5] 3. But I am of opinion that this machinery, under the Georgia law, which must control on such a question, did not pass by Dingler's security deed. That purports only to convey certain described tracts of land with their appurtenances and mentions no machinery. If the machinery passed, it was because it became a fixture and was a part of and appurtenant to the realty. The agreed facts show that the mill is not attached to the mill building in any way, but remains by its own weight on the floor. It was put in and may be taken out without any injury to the building. It had not been erected when the security deed was taken. The express agreement of the petitioner and Edwards in their transaction that it was not to be a fixture is not controlling as against Dingler, but makes it unlikely that Edwards intended to convey it. The Georgia statute on the subject reads (Georgia Civil Code 1910, § 3621):

"Anything intended to remain permanently in its place, though not actually attached to the land, such as a rail fence, is a part of the realty and passes with it. Machinery, not actually attached, but movable at pleasure, is not a part of the realty."

[6] Gins were held prima facie not to be a part of the realty. Smith v. Odom, 63 Ga. 499. The security deed did not embrace this

mill machinery. · Dingler's second deed, however, does convey expressly Edward's title to the machinery. The retention of title was then of record and actually known to Dingler. He stands therefore as to this deed in the shoes of Edwards. I am of opinion, nevertheless, that the petitioner is not entitled to recover the machinery without accounting for the purchase price already paid. It must elect either to rescind and restore what has been paid, under an equitable adjustment with the defendant, or must recover only the balance of the debt, having title to the machinery only as security therefor. The present bill proposes to do neither. Leave will be given, however, to the petitioner, if so advised, to apply to amend its bill so as to take one or the other course. Decree will be withheld for 10 days for this purpose.