THE MERCHANTS & MECHANICS BANK *v.* COTTRELL & SONS.

1. Where a corporation, organized for the purpose of conducting a newspaper and engaged in the prosecution of that business, duly authorized its business manager "to make the best arrangements possible for the purchase of a new press," it was within his power to make a contract for the purchase of a press in which the seller reserved title until the same should be paid for.
2. The reservation of title by the seller of personal property is not valid as against third persons, unless the contract of sale is in writing, and is also executed and attested in the manner prescribed by law for the execution and attestation of mortgages on personalty.
3. Where upon a written contract for the conditional sale of personalty there was an affidavit of probate in due form containing all the statements material to show due execution, which affidavit was made by one not an official person, who, among other things, deposed that he signed the instrument as a witness, the paper was properly admitted to record, was *prima facie* admissible in evidence as a duly executed contract, and the burden was on the opposite party to show the contrary. If from an inspection of the contract itself, as in the present case, it could not be judicially determined whether the deponent signed it as a witness, or as agent for one of the contracting parties, this question of fact should be left to the determination of the jury in the light of all pertinent evidence introduced upon that issue.

April 29, 1895.  Brought forward from the last term.

Complaint.  Before Judge BUTT.  Muscogee superior court.  May term, 1894.

BRANNON, HATCHER & MARTIN, for plaintiff in error.
LITTLE & WIMBISH, *contra.*

SIMMONS, Chief Justice.

1. The first question to be determined in this case is, whether Hanson, as agent of the Enquirer-Sun Publishing Company, had authority to enter into the contract of conditional sale. It appears that the Enquirer-Sun Publishing Company was a corporation formed for the purpose of publishing a newspaper, that Hanson was its general manager, and that the directors of the corporation, at a meeting held November 23d, 1887, adopted a resolution that he "be authorized to make the best arrangements possible for the purchase of a new press." Under this resolution, we think he had full power to purchase a printing-press; and if he was not supplied with the necessary amount of money for that purpose, it was within his power to make a contract of purchase in which title should be reserved in the seller until the press should be paid for. The resolution expressly authorized him "to make the best arrangements possible" for the purchase; and if the contract in question was the best arrangement he could make, the corporation was bound thereby. We think this is true whether he reported the terms of the contract to the directors or not. The resolution did not require him to make such a report.

2. The next question is, whether under the act of September 27, 1881 (Code, §1955a), the reservation of title in a contract of conditional sale, in order to be good as against third persons, must not only be in writing, but must also be executed and attested in the manner prescribed by law for the execution and attestation of mortgages on personalty. The act provides, in the first section thereof, that "whenever personal property is sold and delivered, with the condition affixed to the sale that the title thereto is to remain in the vendor of such personal property until the purchase price thereof shall have been paid, every such conditional sale, in order for

the reservation of title to be good as against third parties, shall be evidenced in writing, and not otherwise; and the written contract of every such conditional sale shall be executed and attested in the same manner as is now provided by existing laws for the execution and attestation of mortgages on personalty; provided, nevertheless, that as between the parties themselves the contract as made by them shall be valid and may be enforced whether evidenced in writing or not." Section II provides, that the existing laws in relation to the registration and record of mortgages on personalty shall apply to such sales. It was argued by counsel for defendants in error, that attestation is required, not in order to give the paper validity, but merely to entitle it to record. We do not concur in this view. We think the plain import of the statute is, that attestation is essential to the validity of the contract, as against third persons, as well as a condition to its being admitted to record. To hold otherwise would be to give the language of the statute a strained construction, and would render it ineffectual to accomplish the main purpose of its enactment. The main object of the statute was to prevent frauds and perjury which, in the absence of such a law, might be practiced by debtors and others in collusion with them to defeat creditors seeking to subject to their claims property apparently belonging to the debtor. (See *Rhode Island Locomotive Works* v. *Empire Lumber Co.,* 91 *Ga.* 642.) This object could be very easily defeated if nothing more were required than that the contract should be in writing. Parties colluding to defraud third persons could write and sign such a contract whenever it might suit their purpose to do so, making it bear date long prior to its actual execution, and establish it by their own testimony as easily as a pretended parol contract. Hence the importance of requiring, as the legislature manifestly intended to do, that in order to be

good as against third persons, it should not only be in writing, but should be executed in the presence of a witness and attested.

3. It appears that the press was purchased from Cottrell & Sons, through their agent Sullivan, and it is claimed by Cottrell &.Sons that the contract of conditional sale was attested by Sullivan. The contract concludes as follows: "In testimony whereof the said parties have hereunto set their hands and seals, the day and year first above written"; and under this, at the right side of the paper, it is signed thus: "The Enquirer-Sun Pub. Co., by H. C. Hanson, Manager." On the left side, under the words, "Witness at execution and delivery," appears a signature as follows: "Jas. H. Sullivan, for C. B. Cottrell & Sons." It was claimed on the part of the plaintiff in error, that the signature of Sullivan was not intended as the attestation of a witness, but as a signature to the contract on behalf of the party represented by him. It appears that in order to have the paper admitted to record, the vendor obtained an affidavit from Sullivan, containing, among other statements necessary for that purpose, the statement that he signed the instrument as a witness. On this affidavit the paper was admitted to record. We think it was properly admitted to record, and that it was therefore *prima facie* admissible in evidence as a duly executed and recorded contract, and the burden was upon the opposite party to show that Sullivan did not sign as a witness. The question whether he did or did not sign as a witness was not one of law to be determined by the court, but should have been submitted to the jury, to be determined by them in the light of all pertinent evidence introduced upon that issue. It seems to us to be the only question left in the case to be determined on the next trial. If Sullivan did sign as an attesting witness, the paper would be valid and binding as against the Merchants &

Mechanics Bank, and, under our decision when the case was here before, would prevail over the lien of the mortgage held by the bank (89 *Ga.* 508); but if he did not sign as an attesting witness, but signed as agent for Cottrell & Sons, the paper was not properly executed and was not binding as against the mortgagee.

*Judgment reversed.*