### In re BONDURANT HARDWARE CO.

(District Court, N. D. Georgia. March 13, 1916.)

#### No. 550.

1. BANKRUPTCY ☞140(1)—TITLE TO PROPERTY—DELIVERY ON CONSIGNMENT.

Implements delivered by the manufacturer to a dealer which were not to be paid for until sold were held on consignment, and can be recovered by the manufacturer after the bankruptcy of the dealer.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199; Dec. Dig. ☞140(1).]

2. SALES ☞465—CONDITIONAL SALE—CONTRACTS—RECORDING—WITNESS.

Where a contract between a manufacturer and dealer, reserving to the former title to goods sold until paid for, was signed by the dealer by its president, followed by the word "Accepted," with a signature, after which was the word "salesman," the signature could not be considered that of a witness to the signature of the president, so as to authorize the recording of the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1353; Dec. Dig. ☞465.]

3. SALES ☞451—CONDITIONAL SALE—CONTRACT—LAW GOVERNING.

Under Civ. Code Ga. 1910, § 8, providing that the validity, form, and effect of all contracts are determined by the laws of the place where executed, but that when such contract is intended to have effect in the state it must be executed in conformity to the laws thereof, a contract between an Indiana manufacturer and a Georgia dealer, whereby the former was to ship goods to the dealer, was a Georgia, and not an Indiana, contract, and must be executed in accordance with the laws of Georgia to be valid there against the trustee of the dealer for bankruptcy.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1323; Dec. Dig. ☞451.]

4. SALES ☞465—CONDITIONAL SALE—REGISTRATION—STATUTE.

Civ. Code Ga. 1910, § 3259, providing that mortgages executed on personalty not within the limits of the state should be recorded within six months after the property was brought in, does not apply to a conditional sale contract of goods to be shipped into the state.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1353; Dec. Dig. ☞465.]

5. BANKRUPTCY ☞219—JURISDICTION—REFORMATION OF CONTRACT.

A court of bankruptcy cannot reform a contract for the sale of goods to the bankrupt on application to the referee, with request that if he be without jurisdiction, he shall forward it to the court, but it ought to be by a bill filed as a plenary proceeding on the equity side of the district court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 356; Dec. Dig. ☞219.]

In Bankruptcy    Proceeding against the Bondurant Hardware Company.  On reclamation proceedings by the Oliver Chilled Plow Works.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Petitioners' claim to part of the property sustained, and claim to the balance denied.

Holden, Shackelford & Meadow and Stephen C. Upson, all of Athens, Ga., for intervener.

T. S. Mell and Cobb, Erwin & Rucker, all of Athens, Ga., for trustee.

NEWMAN, District Judge. [1] In this case as to the two riding cultivators in the possession of the bankrupt company when it failed, it is clear to me from the evidence of both Mr. Bondurant and Mr. Wall that these articles were held on consignment. The whole testimony shows that the Bondurant Hardware Company was not to pay for them unless it sold them. This necessarily makes a consignment. So I think the Oliver Chilled Plow Works is entitled to receive these two riding cultivators from the trustee.

[2] Of course, any one examining it must be satisfied that, on the face of it, the contract by which it is claimed title was reserved in the Oliver Chilled Plow Works is not properly attested for record. No one reading it would suppose, seeing Mr. Langdon Wall's signature as it is there appended, that he was signing it otherwise than as the representative of the seller, the Oliver Chilled Plow Works. It reads, in print, "Accepted, subject to approval of Oliver Chilled Plow Works, South Bend, Indiana, by," then in writing, "Langdon Wall," and after that, "Salesman," this being just below the signature of the Bondurant Hardware Company, by E. J. Bondurant, president.

The affidavit made in Virginia for the purpose of admitting it to probate would clearly be insufficient. The only purpose for which it could have any weight would be, as suggested in the argument, to show that Mr. Wall really thought he was signing it as a witness to Bondurant's signature, and not on behalf of his company.

[3] I am not impressed with the argument that this was an Indiana contract. Section 8 of the Code of Georgia, 1910, is as follows:

"The validity, form, and effect of all writings or contracts are determined by the laws of the place where executed. When such writing or contract is intended to have effect in this state, it must be executed in conformity to the laws of this state, excepting wills of personalty of persons domiciled in another state or country."

This was a contract for the sale of goods by an Indiana establishment to a Georgia corporation. The cases cited by counsel, where mortgages were made in other states and the property brought into this state, do not seem to me to apply here. In the case of Cunningham & Co. v. Cureton, 96 Ga. 489, 491, 23 S. E. 420, in the opinion of the court this is said:

"The reservation of title in the vendors of the machinery having been recorded without due attestation or probate, the record did not operate as constructive notice to the mortgagee (Code 1882, §§ 1955a, 1959; Code 1910, §§ 3318, 3262); and it was admitted that he did not have actual notice prior to the execution of the mortgage. Moreover, there could not be any reservation of title as against third persons, unless the contract was attested in the manner prescribed by the statute. Merchants' Bank v. Cottrell, 96 Ga. 168 [23 S. E. 127]. It was contended that compliance with the law of this state as to the

execution and recording of such contracts was not essential, inasmuch as the notes were executed and made payable in the state of Tennessee, and were therefore governed by the law of that state, under which no writing was necessary to render the reservation of title good as against third persons. We do not agree with counsel in this contention. Where the property is brought into this state, the requirements which our law imposes for the benefit of third persons, as to the attestation and recording of such contracts, are not dispensed with by the fact that it was purchased or is to be paid for in another state. On this subject Mr. Wharton, in his work on the Conflict of Laws, § 275f, says: 'It is scarcely necessary to say that where the lex situs makes the validity of a document to depend upon a certain mode of acknowledgment and registry, these conditions must be complied with. Their omission cannot be made good by the most solemn modes of attestation and registration adopted by the state from which the document emanates.' "

[4] Neither do I concur in the argument as to the six-month period allowed for registration. I think this statute, allowing six months for registration (Code 1910, § 3259), provides that if mortgages are executed on personalty not within the limits of this state, and such property is afterwards brought within this state, then such mortgages should be recorded within six months after such property is brought in. I do not think the provisions of this statute can be construed in any possible way so as to include a contract like this where goods are sold by an establishment doing business in another state to parties in this state and the goods are sold and delivered here and attempted to be held with reservation of title in the seller. It is entirely clear to me that it should be recorded within the 30 days provided by the general statute as to the record of mortgages and conditional bills of sale.

[5] The effort in this case to reform this contract in the manner in which the proceeding was instituted is unusual and somewhat peculiar to me. The application to reform the contract seems to have been made to the referee, with request that if he thinks he lacks jurisdiction to entertain it, he should forward it to the court. The referee held that he had no jurisdiction, and forwarded it to the court.

It does not come before the court, as I see it, in a proper way for the court to consider it. A proceeding like this, to reform a contract, ought to be instituted by a bill filed in the District Court regularly, and it seems to me it would necessarily be a plenary proceeding on the equity side of the court.

I do not think, however, that the facts shown by this record justify a reformation of the contract, even if the proceeding was clearly in proper shape and presented in proper form to the court.

If counsel desire to institute more apt proceedings in the District Court, the dismissal of the proceeding here will be without prejudice.

I hold: First, that the two riding cultivators should be delivered to the Oliver Chilled Plow Works; second, that the bill of sale does not, on its face, appear to be attested by Langdon Wall as a witness; third, that this is not cured by the argument that this is an Indiana contract, or that the vendor had six months within which to record it; and, fourth, that the proceeding here, by which it is sought to reform the contract, is not sufficient to justify any relief from the court in that way, but with the direction that this last matter shall be without prejudice if counsel for the Plow Works desire to institute additional proceedings.