### 13943. BROADWAY APARTMENT CO. *v.* BARNETT *et al.*

PER CURIAM. 1. Notice to an agent of any matter connected with an agency is notice to the principal. Civil Code (1910), § 3599; *Friese* v. *Simpson*, 15 *Ga. App.* 786, 788 (84 S. E. 219).

2. A party who takes the property of another without his consent is guilty of conversion and may be sued in trover for the property, although, being ignorant of the true owner's title, he may have acted in perfect good faith. *M. & M. Trans. Co.* v. *Moore*, 124 *Ga.* 482 (52 S. E. 802), and citations.

3. Whoever meddles with the property of another, whether principal or agent, does so at his peril, and it makes no difference that in doing so he acts in good faith, nor, in the case of an agent, that he delivers the property to his principal before receiving notice of the claim of the owner. If the agent takes the property of another and delivers it to his principal, it is a conversion, and trover will lie for the recovery of the property or for damages as the plaintiff may elect. *Miller* v. *Wilson*, 98 *Ga.* 569 (25 S. E. 578, 58 Am. St. Rep. 319).

4. Estoppel under the Civil Code (1910), § 4419, operates only in favor of an innocent purchaser without notice.

5. Where a materialman files a claim of lien after the time allowed by law, and never seeks to enforce it, he is not estopped from afterwards suing in trover for his materials, on the ground that he had elected an inconsistent remedy.

6. Under the undisputed facts of the case the court properly directed a verdict in favor of the plaintiff. None of the special assignments of error are of such merit as would require a reversal of the judgment.
*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur. Luke, J., dissents.*
DECIDED JULY 10, 1923.

Trover; from Richmond superior court — Judge Henry C. Hammond. August 19, 1922.

Application for certiorari was denied by the Supreme Court.

*Hull & Barrett,* for plaintiffs in error.

*C. Henry & R. S. Cohen,* contra.

Luke, J., dissents. By direction of the majority of the court, the writer has prepared the judgment of affirmance in this case. I do not agree, however, that the trial judge properly directed a verdict.

F. W. Barnett Jr. and C. C. Everroad, doing business as Atlanta Hardwood Products Company, brought suit in trover against the Broadway Apartment Company for the recovery of 678 doors of the value of $9,030. Defendant pleaded: (1) It was a bona fide purchaser for value of the doors from Mackle Construction Company; (2) election of remedies, in that the recording of a material-man's lien " was an election to proceed as a creditor of the Mackle Construction Company, and to enforce the same by claim of lien, and was inconsistent with the remedy of trover;" (3) estoppel by conduct and silence. The presiding judge directed a verdict against defendant.

I will only outline so much of the evidence as in my opinion is pertinent to the decision of the case. On March 5, 1920, Broadway Apartment Company entered into a written contract with Mackle Construction Company for the construction, in Augusta, Ga., of three buildings to be known as the Broadway Apartments, at a maximum guaranteed cost of $235,000, the Construction Company agreeing to do all the work and furnish all the material. On November 5, 1920, the Apartment Company entered into another written contract with the Construction Company, whereby it was agreed that the Apartment Company should take over the Broadway Apartments in their then condition and complete them at the expense of the Construction Company, the Apartment Company agreeing to pay a $2,951.06 draft of the Construction Company and the accrued pay-roll, both to be included in the cost of completing the apartments. The Apartment Company further agreed to employ one Jones, who had theretofore been superintendent for the Construction Company, as its superintendent in completing the buildings, and, upon the completion thereof at the expense of the Construction Company, to make an accounting with the latter company. In April, 1920, plaintiffs, doing business as Atlanta Hardwood Products Company, contracted with Mackle Construction Company to furnish 678 doors for use in the

Broadway Apartments, said doors to be paid for to the extent of 90% on presentation of the bill of lading, and the balance, less freight, with 2% discount, five days after the doors arrived in Augusta. On August 2, 1920, a Wisconsin concern consigned to itself the doors in question, "order notify" Atlanta Hardwood Products Company, with bill of lading and draft for 90% of the cost thereof attached. On the 12th or 13th of August the Wisconsin concern notified plaintiffs that the doors were on demurrage in Augusta. Plaintiffs then took the matter up with the Construction Company and demanded that it pay for the doors, so that they could be taken out and demurrage charges stopped. The Construction Company declined to do this, but agreed that if Jones, its superintendent, had a place in the Broadway Apartments where the doors could be stored, it would take charge of them and become custodian for them, they remaining the property of plaintiffs until paid for, provided that Mr. Everroad, of the Hardwood Company, would come to Augusta, pay the demurrage, and turn the doors over to it. Under this arrangement the doors were delivered to the Construction Company and stored in the apartments. On the back of the bill of lading was written the following: "Augusta, Ga., 8/14/20. Mackle Construction Corporation: Kindly take charge of the car within and unload the doors in a good dry place, to protect them from the weather, sending us invoice for unloading expenses. We are making you custodian of the doors for us until settlement. Very truly, Atlanta Hardwood Products Company, G. B. Everroad, Mgr." This writing was turned over to Jones, then superintendent for the Construction Company.

On November 13, 1920, Everroad, manager of the Hardwood Products Company, went to the Broadway Apartments and found that of the 678 doors 402 were hung and 276 were not hung. On the same day Jones sent Everroad to League, president of the Apartment Company. Everroad testified that he told League he had a claim on the doors. League refused to discuss the matter and directed him to Mr. Barrett, attorney for the Apartment Company. In reference to Mr. Everroad's testimony as follows: "I told Mr. League . . that I had a claim on the doors, and that they were using my doors," Mr. League swore in part as follows: "Mr. Everroad came to my office some time in Novem-

ber and told me that he had not been paid for the doors, and something about his having reserved title to them, and wanted to discuss it with me, and I told him that I was not in a position to discuss it. That was the first I knew of it, and I preferred that he talk with my attorney. . . Mackle never told me anything about how he bought the doors, or from whom he bought them, or the conditions under which he was getting them, and I had absolutely no knowledge of the contract, or trade, or purchase that he made with Mr. Everroad until Mr. Everroad came to my office and told me about it." Mr. League also testified in this connection: " I don't recall that Mr. Everroad told me that he had a reserved title to the doors. I don't say he didn't tell me that." Mr. Mackle, president of the Construction Company, testified in part as follows: " I told Mr. League, the president of the Broadway Apartment Company, that the doors would have to be paid for if they did not pay for another thing in the building. In other words, the Mackle Construction Company did not have title or possession of the doors. Mr. League said that he would take care of [that?] . . . The conversation with Mr. League was held with me personally. I do not know of the doors ever having been paid for. The conversation which I had with Mr. League as above stated was some time prior to the doors arriving in Augusta." Mr. League strenuously denied that Mackle told him any such thing. League also testified as follows: " If I had known when I took it over [the construction of the apartments?] that these doors were not paid for, I would have had to use these doors or buy some similar doors. I had to have doors. I didn't buy any doors, and I haven't paid for these."

Defendant contends that the transaction between the plaintiffs and the Mackle Construction Company was a conditional sale, and that, since the paper retaining title was not witnessed, it was void as against defendant, under the rule laid down in the case of *Merchants Bank* v. *Cottrell,* 96 *Ga.* 168 (23 S. E. 127), where it was held that " attestation is essential to the validity of the contract as against third persons as well as a condition of its being admitted to record." Plaintiffs, on the other hand, say that they delivered the doors to the Construction Company as a mere custodian, or bailee, to hold them until paid for. In the case of *McKenzie* v. *Roper Wholesale Grocery Co.,* 9 *Ga. App.* 185 (70 S. E.

981), which involves the difference between a consignment and a conditional sale, it was held that the transaction would only be a conditional sale in the event the person to whom the goods were delivered became bound for the purchase price upon their delivery, and that, "if the effect of the contract is that the property is delivered from the bailor to the bailee with the understanding that the title is to remain in the bailor, and the bailee does not assume initial responsibility to pay the purchase price, it is ordinarily not a conditional sale, but is a consignment." "A bailee with an option to purchase does not become a purchaser until he has exercised the option." *Furst* v. *Commercial Bank of Augusta,* 117 *Ga.* 475 (43 S. E. 728). I think that the writing itself, as well as the oral testimony in the case at bar, sustains plaintiffs' contention that the Construction Company was a mere custodian of the doors. It follows that the fact that the writing under consideration was not witnessed or recorded is of no moment in this case.

Nor do I think that the defendant became, by virtue of its contract of November 5, a bona fide purchaser for value of the doors in controversy. It took over the contract to complete the apartments " at the expense of the Construction Company, . . and upon completion thereof . . to make an accounting with the latter company," solely for its own protection, without any present consideration, and without paying anything for the doors. " The general rule is that one who takes property in discharge of an existing indebtedness is not regarded as a purchaser for value." *Fountain* v. *Fountain,* 7 *Ga. App.* 362 (66 S. E. 1020).

. Conversion is the gist of trover, and the life of this case depends upon whether or not the defendant was guilty of a conversion. Where the original taking is unlawful, the conversion lies in such taking; and the innocence of the taking does not abate its unlawfulness; as where a bailee having no title to, or right of disposal of, the personalty of another delivers it to a third person in settlement of a debt due the latter's principal. See *Miller* v. *Wilson,* 98 *Ga.* 567 (25 S. E. 578, 58 Am. St. Rep. 319). In the case cited the attorney for the guano company went to the plantation of the true owner of a mule, and, without knowing that the foreman of the owner had no title to the mule, accepted it from the foreman in settlement of his debt to the guano company. Though the attorney was innocent of all moral wrong, his taking

of the mule was unlawful. It was likewise an affirmative act, and not the mere omission to do what was right. However, I do not think this case is authority for the proposition that a party is liable in trover for acquiring the property of another where at the time he has no knowledge of such acquisition and takes no part in it. In such a case I think the procuring of the property is somewhat analogous to the finding of another's goods. The finder commits no legal wrong by the mere act of possessing himself of the property he finds, and, to be liable in trover as a tort feasor, it must be shown that he subsequently converted the property to his own use by exercising dominion over it contrary to the rights of the true owner; and such conversion must be shown by a demand by the owner for his goods, and by a refusal of the finder to deliver them, unless it be shown that the finder had appropriated the articles found to his own use. See *Liptrot* v. *Holmes,* 1 *Ga.* 381.

If the Broadway Apartment Company had no active part in, or knowledge of, the attaching of the doors of the Hardwood Company to its buildings, the writer cannot see that such act amounted to a malfeasance on the part of the Apartment Company that would sustain trover against it. If this be true, the Apartment Company must be guilty of some subsequent act of conversion, to support this suit. The property had become a part of its realty. Trover does not ordinarily lie for the recovery of realty, and I do not think the refusal of the defendant to detach the doors and deliver them to the Hardwood Company amounted to a conversion. Then trover would not lie for these doors. In the case of *Schofield* v. *Woodward,* 137 *Ga.* 65 (72 S. E. 509), it was held: "Where one sells and delivers personalty to a contractor, and retains title thereto, but, before the writing evidencing the contract retaining title in the seller is recorded or executed, the contractor uses the personalty in the permanent improvement of the real estate of another, the seller cannot recover such personalty from the latter. This is true though the contract between the owner of the real estate and the contractor for the improvement of the former's property has not been completed, and though the real estate owner has not paid the contractor the full contract price for the improvement of the property, at the time the contract retaining title to the property in the seller is recorded." In *Rowe* v. *Spencer,*

140 *Ga.* 549 (79 S. E. 130), Chief Justice Fish, referring to the *Schofield* case, said: "This ruling rests upon the principle that the material sold to the contractor was evidently intended by both parties to the sale to be used in the erection of the building, and, after being so used, it became a part of the realty, and could not be recovered as personalty." While the *Schofield* case is not directly in point, for the reason that it involved a sale, and not a bailment, yet it is at least persuasive authority here, since it holds that trover would not lie against the owner of the building for the personalty after it had become realty, without any notice on his part that title was retained. I do not mean to say that the Apartment Company acquired title to the doors, or that it would not be liable for their value, but I do not think that the essential element of all trover suits — the conversion — would be shown.

On the other hand, let us assume that when the defendant took over the construction of its buildings it knew that the Construction Company was a mere custodian of the doors, without any title to them, or that it knew of facts sufficient to put it on inquiry which, if pursued, would bring that knowledge. The Construction Company would clearly be guilty of a conversion of the doors in assuming ownership of them; and, had the suit been against it, proof that it had attached the doors to its own realty would be no defense to the action. See *Woods* v. *McCall,* 67 *Ga.* 506 (1). Nor do I think that the Apartment Company, with knowledge of the custodianship, could stand idly by and acquiesce in the conversion of the Construction Company, and then successfully defend upon the ground that the doors had been attached to its buildings. It is true that "there must be some act of malfeasance, not mere nonfeasance, some positive wrong, and not the mere omission of what is right." *Shore* v. *Brown,* 19 *Ga. App.* 476 (5) (91 S. E. 909). I think the case of *Anderson* v. *Foster,* 105 *Ga.* 563 (32 S. E. 373), announces a rule that has some bearing on this case. It is as follows: "If F. C. Foster, an executor of A. G. Foster, had money in his hands belonging to the estate of plaintiff's intestate, and wrongfully paid it to E. W. Butler, as executor of Hill, and Butler received it with knowledge of F. C. Foster's misapplication of it, then they were join tort-feasors, and, without more, liable individually to plaintiff's administrator." I think that if the Apartment Company had guilty knowledge of the conversion

of the Construction Company, they would both be joint tort-feasors, and that the Construction Company would be liable in trover for the doors.

I think the above views are in consonance with our lien laws. They recognize the fact that it is not feasible to require the owner of real estate who contracts with another to furnish the materials for, and construct, its building, to make inquiry as to whether the contractor has the right to incorporate in its building all the materials that are delivered on its premises and are apparently intended to be used in its building. Such owner has the right to believe that the materials are intended for use in its buildings, subject to the right of the materialman to protect itself so far as the recordation and enforcement of the liens will do so, and to the right of the owner of the building to protect itself by a compliance with the requirements of the lien laws. It would surely be an injustice to an innocent owner if the materialman could, by secretly making the contractor its custodian, deliver material on the very premises where it is to be used, and then, after the building is constructed, dismantle it by recovering the materials of which it was constructed. Such conduct would be against public policy, and against common right. Let the materialman either furnish the material in the usual way, with the right of both himself and the owner of the realty to protect themselves as the lien laws provide, or else let it know that it is not within his power to clothe the contractor with every indicia of the right to use the material in the building of the innocent owner, and then "trover away" the building. And I think this reasoning is good whether or not the materials could be renewed without damage to the realty.

Since in the case at bar the plaintiffs produced testimony which might or might not have been true (it was strenuously denied by defendant), and which might or might not have been sufficient to put defendant upon notice of the Construction Company's custodianship, accordingly as the jury might interpret it, I think the court erred in directing a verdict.

As to the defendant's contention that the filing of a materialman's lien on November 13, 1920, was an election of remedies and precluded the plaintiffs from proceeding in trover, I think it had no such effect. The lien was not filed within the time

prescribed by law, and there was no attempt to enforce it. It was not filed until eight days after the defendant took over the construction contract. Nor does it appear that because of its filing the Apartment Company acted either to its own injury or to the benefit of the Hardwood Company. *Rowe v. Weichselbaum Co.,* 3 *Ga. App.* 506 (60 S. E. 275); Civil Code (1910), § 5738; *Wesley v. Battle,* 17 *Ga. App.* 755 (1) (88 S. E. 415); *Pruett v. Edwards,* 17 *Ga. App.* 645 (1) (88 S. E. 36).

"Estoppel under section [4419 of the Civil Code (1910)] operates only in favor of an innocent purchaser without notice." *Meetze v. Potts,* 6 *Ga. App.* 189 (64 S. E. 672). Plaintiffs were not estopped to bring their action, by their silence and conduct.