### 29691.  CARTER v. HORNSBY.

DECIDED NOVEMBER 27, 1942.

*James R. Venable, Frank A. Bowers, Frank T. Grizzard,* for plaintiff.

*J. C. Savage, E. L. Sterne, J. C. Murphy, F. A. Hooper Jr.,* for defendant.

STEPHENS, P. J.   Jack Carter instituted an action of trover against M. A. Hornsby, and at the same time executed his affidavit to obtain bail.   The plaintiff alleged in his petition that the defendant was in possession of "one thousand and thirty-nine dollars in lawful United States currency, and being the same currency delivered to the defendant by W. C. Smith and H. E. Atsinger at City of Atlanta police station on February 5, 1942, and referred to in written receipt of the defendant, a copy being hereto annexed, marked 'Exhibit A' and made a part hereof."   The plaintiff alleged that the value of the property was $1039, and that he claimed title thereto.   He also alleged that the defendant refused to deliver the property to the plaintiff and claimed as hire 8 per

cent. interest from February 5, 1942. The receipt referred to in the petition was dated February 5, 1942, was signed by M. A. Hornsby, chief of police, and read as follows: "Received of Mr. W. C. Smith, of 864 Beecher Street, and Mr. H. E. Atsinger, of 1914 Allene Avenue, the sum of $1039 left in their possession by one Jack Carter." This receipt was on stationery headed, "City of Atlanta, Department of Police."

The defendant filed an answer in which he admitted that he had in his possession the sum of money alleged in the petition but denied that the plaintiff had any interest in the money. The plaintiff amended the petition as follows: "Said currency was held separate and segregated from all other currency by the defendant, and withheld from the channels of commerce and use by the defendant, and was contained in a certain road map, wrapped therein, and said package of currency so wrapped in said road map was contained in a brown Manila paper sack approximately six inches wide by twelve inches long." The case was tried before a judge of the civil court of Fulton County, without a jury, and judgment for the defendant was rendered. A motion for new trial was overruled, and the plaintiff excepted.

The defendant did not claim any title to this money. He testified that he did not claim that the money belonged to him and that he did not have any interest in the money; that on February 5, 1942, Smith and Atsinger came to his office at the police station in Atlanta; that Smith, the stepfather of the plaintiff, stated that the plaintiff had handed him a small package wrapped up in a road map and asked him to deliver the package to his sister, Mrs. Atsinger, with the request that his sister keep the package for the plaintiff "because it was very valuable;" that Smith further stated that he delivered the package on his way to work and later in the day went by Mrs. Atsinger's home, and he and Mrs. Atsinger examined the package and found that it contained money; that Smith further stated that they found the $1039 in the package, and as it wasn't theirs they did not want to keep it; and that they brought it to the police station and turned it over to the defendant; that he put the money in a safe separate from all other money, and that when he was served with the bail trover he delivered the same money and package to the court officer.

Smith testified for the plaintiff that when they found the pack-

age contained so much money they were afraid to keep it around the house, and that they didn't know how the plaintiff got the money but figured it was too much money for him to have, and thought the best policy was to turn the money into police headquarters; that the plaintiff, at the time he delivered the package of money to the witness, stated that he wanted him to take the package to his sister for her to keep for him; that when the money was delivered to the defendant he gave to him and Atsinger a receipt for $1039 after he had counted the money.

Atsinger, the brother-in-law of the plaintiff, testified that when they discovered that the package contained money they decided the best thing to be done about it was to give it to Chief Hornsby and let him keep it, and that on the next morning they delivered the package to the defendant, and he gave to them a receipt therefor. There was evidence that the plaintiff had been convicted of the larceny of an automobile and sentenced to serve a term in the penitentiary, from which he had escaped, and that he had a criminal record. The plaintiff did not appear in court, and there was evidence to the effect that he had spent little time in Atlanta in the past several years. His stepfather and brother-in-law testified that when the plaintiff was in Atlanta he did not work regularly. A witness for the defendant, a city detective, E. I. Hilderbrand, testified that on the night of February 3 and the morning of February 4 the office of the Georgia Power Company at 867 Gordon Street, S. W., in the City of Atlanta, which is located about four blocks from where the plaintiff's stepfather lives, was burglarized and the safe robbed; that approximately $3463.86 was taken from this safe; that he did not know whether the plaintiff had any connection with the robbery, but "We know he was in that vicinity on that particular morning;" that other arrests had been made in connection with the robbery but no one had been convicted, and that no one had been indicted or was being held in connection with it. There was no evidence that the plaintiff had a record as a safe robber.

Under the foregoing evidence a verdict for the defendant was not authorized. There was no evidence that any person other than the plaintiff claimed this money. The evidence was undisputed that the money was turned over by the plaintiff to his stepfather for the purpose of being delivered to his sister to keep for the

plaintiff. The defendant accepted possession of the money knowing that the plaintiff had asked his sister to keep it for him. The defendant made no claim thereto. He was merely the custodian of the money on behalf of the plaintiff's sister, to whom the money had been delivered to keep for the plaintiff. In his answer the defendant denied that the plaintiff had any title or interest in the money. The evidence did not show that any one other than the plaintiff had any actual claim to the money. The money was in the plaintiff's possession, and, without more, was presumably his property.

It was held in *Broadway Apartment Co.* v. *Barnett*, 30 *Ga. App.* 562 (118 S. E. 601), as follows: "A party who takes the property of another without his consent is guilty of conversion and may be sued in trover for the property, although, being ignorant of the true owner's title, he may have acted in perfect good faith. . . Whoever meddles with the property of another, whether principal or agent, does so at his peril, and it makes no difference that in doing so he acts in good faith. . . If the agent takes the property of another and delivers it to his principal, it is a conversion, and trover will lie for the recovery of the property or for damages as the plaintiff may elect." See *Miller* v. *Wilson*, 98 *Ga.* 567, 569 (25 S. E. 578, 58 Am. St. R. 319) ; *Merchants &c. Transportation Co.* v. *Moore*, 124 *Ga.* 482 (52 S. E. 802), and cit. The same principle would be applicable where the owner of property intrusted it to his agent to keep for him and his agent turned it over to another. Particularly would this be true where the latter received the money with knowledge that it did not belong to the agent but belonged to the owner, and kept such money in the original container in which it was received separate and apart from any other money.

It has been held that the plaintiff need not prove a conversion of the property where the defendant in trover is in possession thereof when the action is brought, and where in his answer he denies the plaintiff's averment of title. *Securities Trust Co.* v. *Marshall*, 30 *Ga. App.* 379 (3) (118 S. E. 478) ; *Dickerson* v. *Universal Credit Co.*, 47 *Ga. App.* 512 (4) (170 S. E. 822).

An action in trover will lie against a defendant for conversion of and failure to deliver specific money. See *Farmers &c. Co.* v. *McElhannon*, 98 *Ga.* 394 (25 S. E. 558) ; *Cooke* v. *Bryant*, 103

*Ga.* 727, 731 (30 S. E. 435). In *McElhannon* v. *Farmers &c. Co.*, 95 *Ga.* 670, 672 (22 S. E. 686), the court stated: "In the old action of detinue, it was early held that the action would not lie for a given quantity of money . . generally, or any other article of like character, for the reason that such money . . was incapable of being distinguished from any other money . . ; but if the action be for money . . in a bag or sack, then, the bag or sack being itself capable of identification, the court would be enabled to distinguish thereby the particular goods for the recovery of which the action was brought." In *Harris* v. *Hines*, 35 *Ga. App.* 414 (133 S. E. 294), this court properly held that trover was maintainable for an amount of money which was contained in a "certain small sack of bedticking, . . all of which money, while contained in said sack, was delivered to the defendant Luke Harris by Carter Cogman . . and which bag of money the said defendant accepted from the said Carter Cogman to keep for him."

The defendant contends that it was incumbent on the plaintiff not only to prove that he had title to the money but also the right of possession, and cites *Birmingham Fertilizer Co.* v. *Dozier*, 13 *Ga. App.* 759 (79 S. E. 927). The general rule is that the plaintiff in order to maintain trover must show either title or right of possession wrongfully withheld by the defendant. *Groover* v. *Iler*, 1 *Ga. App.* 77 (57 S. E. 906). In *Southern Railway Co.* v. *Strozier & Waters*, 10 *Ga. App.* 157 (73 S. E. 42), it was held: "It is well settled that, to support an action of trover, the plaintiff must show either title in himself at the time when the suit was commenced, prior possession, or the right of possession." In the *Dozier* case, supra, relied on by the defendant, this court said: "To recover in trover it is essential that the plaintiff show either title or right of possession; in some cases he must show both. In the latter class of cases, although the plaintiff may show that he has legal title, if it appears that he has by contract surrendered possession to another, who is rightfully entitled to retain possession, he can not recover possession by mere proof of title." In that case the defendant had received the personal property, which consisted of certain notes, as collateral, and under the contract he was entitled to retain possession until certain commissions and items due for storage had been paid to him. In the case at bar the plaintiff caused the property in question to be delivered as his property

to his sister to keep for him, and the defendant received this property with knowledge of this fact.

The judgment for the defendant was not authorized by the evidence, and the judge erred in overruling the motion for new trial.

*Judgment reversed. Sutton and Felton, JJ., concur.*